105 T.C. No. 21


UNITED STATES TAX COURT


KRISTINE A. CLUCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18590-91.                    Filed October 30, 1995.


     P is married to E.  E is not a petitioner in this
case.  E's mother, M, died in 1983, leaving E and his
brothers a tract of land (G).  G was sold in 1984.  P
and E have filed joint Federal income tax returns since
1986.  P and E claimed net operating loss (NOL)
deductions on their 1987 and 1988 returns, consisting
of unused NOL's carried forward from E's 1983, 1984,
and 1985 returns and from P and E's 1986 joint return.
In 1989, after a dispute with R regarding the value of
G for purposes of M's estate's Federal estate tax
liability, E and his brothers, who each had owned a
one-fourth interest in G, entered into an agreement
with R.  Pursuant to the agreement, G was valued  at
$1,420,000.  R disallowed the 1984 portion of the 1987
and 1988 NOL's on the ground that E had unreported
income from the sale of G in 1984, sufficient to
eliminate the 1984 loss.  P argued that E did not have
     unreported income in 1984 because E's basis in G
was  $625,000, which exceeded his amount realized
($619,425).  R argued that P was estopped by the duty
of consistency from arguing that E's basis was greater

than $355,000 (one-fourth the amount E had agreed G was worth as of the date of M's death).

1. _Held_:  P and E are in a sufficiently close legal and economic relationship so that P is estopped by E's representation, under the duty of consistency. _Held_, _further_, P cannot increase her 1987 and 1988 NOL for previously unclaimed depreciation and amortization deductions, because she has failed to substantiate her entitlement to such deductions.

2. _Held_, _further_, additions to tax under secs. 6651,    6653, and 6661, I.R.C., are sustained.

_Kevin P. Kennedy_ and _Elwood Cluck_, for petitioner.

_Steven B. Bass_, for respondent.

PARR, _Judge_:  Respondent determined deficiencies in and additions to petitioner's Federal income tax for taxable years 1987 and 1988 as follows:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651 | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1987 | $7,013 | $1,380 | $620 | [1] | $1,753 |
| 1988 | 35,574 | 13,398 | 2,856 | -- | 8,894 |

[1] 50 percent of the interest that is computed on the portion of the underpayment which is attributable to negligence or intentional disregard of rules and regulations.

Although petitioner filed joint returns with her husband, Elwood Cluck (Elwood), Elwood is not a party herein because his liability was determined and discharged in the U.S. Bankruptcy Court for the Western District of Texas.  _Cluck v. United States_, 165 Bankr. 1005 (W.D. Tex. 1993).  After concessions,[1] the issues

---

[1]  Respondent disallowed a medical expense deduction of $1,366 and a miscellaneous deduction of $250 for tax year 1987.  In her

(continued...)

for decision are: (1) Whether petitioner is entitled to net operating loss (NOL) deductions in the amounts claimed. This turns on whether petitioner may claim that her husband had a higher basis in property he inherited from his mother than that stipulated by him as beneficiary/transferee in a prior estate case in which an agreed decision was entered in this Court. Estate of Cluck v. Commissioner, Docket No. 10381-88 (August 29, 1989). We hold she may not. (2) Whether petitioner is liable for the section 6651 addition to tax, because she failed to timely file her 1987 and 1988 Federal income tax returns.[2] We hold that she is liable. (3) Whether petitioner is liable for the addition to tax for negligence under section 6653 for the years at issue. We hold that she is liable. (4) Whether petitioner is liable for the substantial understatement penalty under section 6661 for the years at issue. We hold that she is liable.

FINDINGS OF FACT

---

[1](...continued)
petition, petitioner asserted that these deductions were allowable; however, petitioner did not address these issues at trial or on brief. Accordingly, we find that petitioner has conceded these issues. Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

[2] All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar.

Some of the facts have been stipulated or deemed stipulated under Rule 91(f)(3).[3] The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference. Petitioner, Kristine A. Cluck, resided in San Antonio, Texas, on the date the petition was filed.

Petitioner is still married to Elwood, who was an attorney representing her in this case. Although Elwood is not a petitioner, we have found a number of facts related to him, as such facts are germane to the issues presented.[4]

Petitioner and Elwood were married on July 24, 1984. For the taxable years 1984 and 1985, Elwood filed his Federal income tax returns as married filing separate. The record does not establish whether petitioner filed Federal income tax returns for either 1984 or 1985. Beginning in 1986 and continuing through

---

[3] By order dated Dec. 13, 1993, we granted respondent's motion to compel stipulation and directed petitioner to file a response to respondent's proposed stipulation of facts and to show cause why the facts and evidence recited in such proposed stipulation should not be accepted as established for purposes of this case. Petitioner's response to our show cause order was evasive and not fairly directed at the proposed stipulation or any portion thereof. Accordingly, on Jan. 12, 1994, we ordered that respondent's proposed stipulation of facts be deemed stipulated for purposes of this case.

[4] When a husband and wife file joint Federal income tax returns, sec. 6013(d)(3) imposes joint and several liability upon each spouse. The law of joint and several liability permits the Internal Revenue Service (IRS) to assess one spouse for the tax deficiency of the couple and to issue a deficiency notice to the other spouse when it is unable to satisfy the claim. However, the IRS is allowed to collect this single tax obligation only once. Dolan v. Commissioner, 44 T.C. 420, 430 (1965).

the years at issue, petitioner and Elwood filed joint Federal income tax returns.  Petitioner and Elwood also filed amended Federal income tax returns, Forms 1040X, for the taxable years 1987 and 1988.

Petitioner and Elwood claimed an NOL deduction of $195,459 on their 1987 joint Federal income tax return.  The 1987 deduction consisted of unused NOL's carried forward from Elwood's 1983, 1984, and 1985 Federal income tax returns and from petitioner's and Elwood's 1986 joint Federal income tax return. Petitioner and Elwood reported the calculation of their 1987 NOL deduction on a schedule attached to their 1987 return as follows:

| | |
|---|---|
| 1983 | $10,083 |
| 1984 | 120,199 |
| 1985 | 25,005 |
| 1986 | 40,172 |
| Total | 195,459 |

Petitioner and Elwood claimed an NOL deduction of $109,340 on their 1988 joint Federal income tax return.  The 1988 NOL deduction consisted of the same losses that make up the 1987 NOL, reduced by $86,119, which was the amount of income offset by the use of the 1987 NOL.  Thus, petitioner and Elwood reported the calculation of their 1988 NOL deduction on a schedule attached to their 1988 return as follows:

| | |
|---|---|
| 1983 | $10,083 |
| 1984 | 120,199 |
| 1985 | 25,005 |
| 1986 | 40,172 |
| Less 1987 income | (86,119) |
| Total | 109,340 |

The 1983, 1984, 1985, and 1986 NOL carryforwards, discussed above, were incurred in various businesses operated by Elwood.

In 1984, Elwood entered into a transaction which affects his reported 1984 loss, and therefore the NOL's reported by petitioner and Elwood for the years at issue.

Specifically, in 1984, Elwood sold a one-fourth interest in a 149.67-acre tract of land located in Grapevine, Texas (Grapevine property). Elwood had inherited this property from his mother, Martha Cluck, who died July 29, 1983. Elwood's three brothers owned the remaining three-fourths interest in the Grapevine property, which they too had inherited from their mother in 1983.

Elwood prepared the Federal estate tax return for the Estate of Martha Cluck (Estate), and he signed it as the Estate's personal representative. The return included a one-half interest in the Grapevine property in the decedent's gross estate, valued at $527,250. An appraisal, attached to the return, valued a 100-percent interest in the Grapevine property at $1,054,500.[5]

On March 29, 1984, Elwood and his brothers entered into a contract for the sale of the Grapevine property to Joe L. Wright. Pursuant to a closing statement dated April 26, 1984, the Cluck

---

[5] According to Elwood's testimony, the reason only one-half the value of the Grapevine property was included in the decedent's gross estate was that Elwood and his brothers believed that they had inherited a one-half interest in the property in 1964, which is the year their father died.

brothers transferred the Grapevine property to Joe L. Wright for a net sale price of $2,477,700. Each brother's share of the net sale proceeds was one-fourth of $2,477,700, or $619,425. Elwood did not report the sale of the Grapevine property on his 1984 Federal income tax return, on the theory that his basis in the one-fourth interest sold was equal to or exceeded the proceeds he received from the sale.

On March 10, 1988, respondent issued a notice of deficiency to the "Estate of Martha K. Cluck, Elwood Cluck, Executor" (Estate case). In the notice, respondent determined that, on the date of her death, Martha Cluck owned the entire 149.67 acres located in Grapevine, Texas, rather than a one-half interest as reported in the Estate's tax return. Respondent further determined that the date of death fair market value of the decedent's interest was $2,548,242, rather than $527,250 as reported on the Estate's tax return. Respondent issued similar notices to each of Elwood's three brothers, apparently naming each as "Executor".[6] Thereafter, Elwood and each of his brothers timely filed petitions for redetermination with this Court.

In his petition, Elwood alleged that respondent erred in determining that Martha Cluck owned the entire 149.67 acres of land located in Grapevine, Texas. He asserted that she owned

---

[6] Actually, Martha K. Cluck died intestate, and her four sons were thus beneficiaries, and thus potentially liable as transferees for any unpaid Federal estate tax owed by her estate.

only a one-half interest in the property on the date of her death, and that the fair market value was $527,250. Alternatively, Elwood alleged that, in the event the Court determined that Martha Cluck owned the entire legal interest in the Grapevine property at the date of her death, the fair market value thereof did not exceed $1,054,500.

On November 25, 1988, we consolidated the cases of Elwood and his brothers, and the consolidated case was set for trial. On February 27, 1989, Elwood and his brothers entered into an agreement with respondent, styled "Stipulation of Settled Issues."[7] The agreement provided, among other things, that 100 percent of the value of the Grapevine property would be included in Martha Cluck's gross estate. In addition, the parties agreed that the fair market value of Martha Cluck's 100-percent interest in the Grapevine property on the date of her death was $1,420,000. Separate decisions were entered in the Estate case as to each of the brothers based on the aforementioned agreement. This Court entered a decision in Elwood's case on August 29, 1989.

---

[7] Petitioner argues that evidence of the agreement between the Cluck brothers and respondent is inadmissable under Rule 91(e), because it was a stipulation which was used in another case. Although styled as a stipulation, the settlement is an agreement between the parties which was deemed stipulated for purposes of this case. See supra note 3. Furthermore, the agreement is relevant and not barred by any evidentiary rule. We therefore find that the agreement is admissible in this case. AMERCO & Subs. v. Commissioner, 96 T.C. 18, 43-44 (1991), affd. on other grounds 979 F.2d 162 (9th Cir. 1992).

OPINION

Issue 1. The NOL's for 1987 and 1988

Respondent disallowed $166,129 of petitioner's claimed 1987 NOL deduction,[8] and the entire NOL claimed for 1988. More specifically, respondent adjusted the 1983, 1984, 1985, and 1986 losses that made up the 1987 and 1988 NOL's. Respondent eliminated the 1983 and 1985 NOL's on the ground that petitioner did not elect to carry such losses forward. Petitioner has conceded this adjustment.[9] Respondent also disallowed the carryforward of the 1984 loss, on the ground that such loss was eliminated by the unreported gain arising from the sale of the Grapevine property, as discussed below. Finally, respondent reduced the 1986 loss by $10,842, alleging that petitioner had

---

[8] Petitioner claimed a net operating loss deduction of $195,459 for 1987, and respondent allowed a net operating loss deduction of $29,330.

[9] Petitioner made no arguments regarding her failure to elect to forgo the carrybacks in both 1983 and 1985, and her returns for those years do not contain such an election. Since petitioner failed to make such an election, as required by sec. 172(b)(3), the 1983 and 1985 losses must first be carried back to 1980 and 1982, respectively. It appears that Elwood had sufficient income in 1980 and 1982 to absorb the 1983 and 1985 carrybacks, and petitioner has not argued otherwise. Therefore, we find that the portion of petitioner's 1987 and 1988 net operating losses arising from the 1983 and 1985 loss carryforwards is not allowable. Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

received unreported income in that amount.  Petitioner conceded this adjustment.[10]

After conceding respondent's adjustments to the 1983, 1985, and 1986 NOL carryforwards, petitioner asserts that the portion of the 1987 and 1988 NOL's arising from the 1984 NOL carryforward is allowable.  Furthermore, petitioner asserts that she had additional, unclaimed deductions during the period 1984 to 1988 which contribute to the NOL available in 1987 and 1988.

As a preliminary point, we note the well-settled rule that the Commissioner may recompute a taxpayer's taxable income or loss for a year in which the statute of limitations would otherwise bar assessment in order to redetermine the amount of the NOL deduction claimed in an open year.  ABKCO Indus., Inc. v. Commissioner, 56 T.C. 1083, 1089 (1971), affd. 482 F.2d 150 (3d Cir. 1973); State Farming Co. v. Commissioner, 40 T.C. 774, 783 (1963).  Accordingly, in determining whether petitioner's 1987 and 1988 NOL's are allowable, respondent may recompute the income or loss reported in the tax years which generated the carryforwards claimed by petitioner in 1987 and 1988.

A.    1984 Gain From Sale of Grapevine Property

Respondent argues that Elwood had sufficient unreported gain arising from the sale of the Grapevine property in 1984 to

[10]  The amount of unreported income conceded by petitioner exceeds $10,842.  However, since respondent has not argued for an increase in the deficiency, we treat petitioner's concession as being limited to $10,842.

eliminate Elwood's claimed loss for that year. Accordingly, petitioner would not be entitled to claim the 1984 NOL carryforward as part of her 1987 and 1988 NOL deductions. Petitioner argues that Elwood did not have unreported gain on the 1984 sale of the Grapevine property, so the loss reported in 1984, which was carried forward to 1987 and 1988, was allowable.

Gross income includes gains derived from dealings in property. Sec. 61(a)(3). Gain derived from the disposition of property is the excess of the amount realized over the property's adjusted basis. Sec. 1001(a). The basis of property acquired from a decedent is generally the fair market value of the property as of the date of the decedent's death. Sec. 1014(a). This basis rule parallels the general rule of the estate tax for determining the value of property which is included in a decedent's gross estate under section 2031. Sec. 1.1014-1(a), Income Tax Regs.

The parties agree that Elwood realized $619,425 on the sale of the Grapevine property, but disagree on Elwood's basis. Respondent argues that Elwood was bound by a duty of consistency to use a basis of $355,000 when he sold the Grapevine property.[11] The $355,000 amount is one-fourth of $1,420,000, the stipulated value in the Estate case. In the alternative, respondent argues

---

[11] Respondent has conceded that she has the burden of proof on this issue, because the duty of consistency is an affirmative defense. Rule 142(a).

that Elwood's basis in the Grapevine property was $263,625, which
is one-fourth of the value which the appraisal attached to the
Estate's Federal estate tax return placed on the Grapevine
property as of the date of Martha Cluck's death.  Petitioner
argues that the duty of consistency is inapplicable in this case
and that, under all the facts and circumstances of this case, she
has established that the Grapevine property had a fair market
value of $2,500,000 on the date of Martha Cluck's death, and
therefore Elwood had a basis of $625,000 when he sold his
interest in the Grapevine property.

The "duty of consistency", sometimes referred to as quasi-
estoppel, applies in this Court.  E.g., LeFever v. Commissioner,
103 T.C. 525, 541 (1994); Unvert v. Commissioner, 72 T.C. 807
(1979), affd. 656 F.2d 483 (9th Cir. 1981); Mayfair Minerals,
Inc. v. Commissioner, 56 T.C. 82 (1971), affd. 456 F.2d 622 (5th
Cir. 1972).  The duty of consistency is based on the theory that
the taxpayer owes the Commissioner the duty to be consistent in
the tax treatment of items and will not be permitted to benefit
from the taxpayer's own prior error or omission.  LeFever v.
Commissioner, supra.  The duty of consistency doctrine prevents a
taxpayer from taking one position one year and a contrary
position in a later year after the limitations period has run for
the first year.  Id. at 541-542.  A taxpayer gaining governmental
benefits on the basis of a representation or an asserted position

is thereafter estopped from taking a contrary position in an effort to avoid taxes.  Id. at 542.

There are a number of justifications for the duty of consistency, the most obvious being that taxpayers should not be able to maintain inconsistent positions to obtain an unfair advantage.  As stated by the Court of Appeals for the Fifth Circuit:

> In adjusting values the Commissioner in effect represents the interests of all other taxpayers who must bear what the particular taxpayer unjustly escapes.  It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships.  Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected. * * * [Alamo Natl. Bank v. Commissioner, 95 F.2d 622, 623 (5th Cir. 1938), affg. 36 B.T.A. 402 (1937).]

Aside from eliminating the unfair advantage obtained by a taxpayer who maintains inconsistent positions, the duty of consistency also contributes to our self-reporting system of taxation.  As this Court has noted, to allow taxpayers "to disavow their prior representations * * * would invite similar intentional deceit on the part of other taxpayers seeking to gain a tax benefit."  LeFever v. Commissioner, supra at 544. Furthermore, this Court has noted that the duty of consistency buttresses the values of finality and repose inherent in statutes of limitation, and it possesses the administrative virtue of eliminating the fact-finding problems associated with reviewing old transactions, "when the evidence may be stale and

unavailable." Bartel v. Commissioner, 54 T.C. 25, 32 (1970);
McMillan v. United Sates, 14 AFTR 2d 5704, ___, 64-2 USTC par.
9720, at 93,839 (S.D. W. Va. 1964); see Johnson, "The Taxpayer's
Duty of Consistency", 46 Tax Law Rev. 537, 538, 544-549 (1991).

This Court has found that the duty of consistency applies
when:

> "(1)  the taxpayer has made a representation or
> reported an item for tax purposes in one year,
>
> (2)  the Commissioner has acquiesced in or relied on
> that act for that year, and
>
> (3)  the taxpayer desires to change the representation,
> previously made, in a later year after the statute of
> limitations on assessments bars adjustments for the initial
> year."  [LeFever v. Commissioner, supra at 543 (quoting
> Beltzer v. United States, 495 F.2d 211, 212 (8th Cir.
> 1974)).]

Respondent argues that the foregoing triune standard has
been satisfied.  Specifically, respondent argues Elwood made a
representation in the stipulation of settled issues that the
value of the Grapevine property for purposes of computing the
Estate's Federal estate tax liability was $1,420,000.  Respondent
argues that, due to the relationship between Elwood and
petitioner, petitioner was bound by this representation.
Respondent relied on this representation, allowing such value to
be used in computing the Estates's Federal estate tax liability.
Finally, respondent argues that petitioner is now maintaining a
position inconsistent with the prior representation, after the
decision in the Estate case has become final, barring subsequent

adjustments to the Estate. Accordingly, respondent argues that petitioner is estopped from arguing that Elwood's basis in the Grapevine property was higher than one-fourth of the agreed value of the Grapevine property in the stipulation of settled issues.

Petitioner argues that the duty of consistency does not apply in this case, since she was not a party to the stipulation.

In analyzing whether the duty of consistency applies, we note that respondent's initial premise is that the duty of consistency would estop Elwood from arguing that his basis in the Grapevine property was greater than one-fourth of the amount agreed to in the stipulation of settled issues. We agree with respondent's threshold premise, as it comports with our decision in LeFever v. Commissioner, 103 T.C. 525 (1994).

However, even assuming the application of the duty of consistency against Elwood, petitioner points out that Elwood is not the taxpayer in this case. Petitioner asserts that she was not a party to and did not enter into the stipulation of settled issues, and therefore the first prong of the duty of consistency test is not satisfied. Respondent argues that, due to the relationship between Elwood and petitioner, petitioner was bound by Elwood's representation.

Several courts have held that the duty of consistency doctrine prevents a beneficiary of an estate from repudiating an estate tax value, where the beneficiary had been a fiduciary of the estate. Beltzer v. United States, 495 F.2d 211 (8th Cir.

1974); <u>Griffith v. United States</u>, 27 AFTR 71-436, 71-1 USTC par. 9280 (N.D. Tex. 1971); <u>McMillan v. United Sates</u>, <u>supra</u>; accord <u>Hess v. United States</u>, 210 Ct. Cl. 483, 537 F.2d 457 (1976).  But cf. <u>Ford v. United States</u>, 149 Ct. Cl. 558, 276 F.2d 17 (1960). In <u>Beltzer</u>, <u>Griffith</u>, and <u>McMillan</u>, the taxpayer beneficiary had been a coexecutor or administratrix of the estate.  In <u>Hess</u>, the taxpayer was a testamentary trust whose trustees had been coadministrators of the estate.  By contrast, in <u>Ford</u>, where the beneficiaries had not been estate fiduciaries, the quasi-estoppel doctrine was rejected by the court.  This Court has not previously addressed this precise issue.

In <u>Ford v. United States</u>, <u>supra</u>, the decedent was a citizen of the United States and a resident of Brazil.  At the time of his death, the decedent owned stock in a Brazilian corporation. Under Brazilian law, the stock passed from the decedent to his two minor children.  The executor of the decedent's estate used the value established by Brazilian appraisers, after converting the amount into dollars, for Federal estate tax purposes.  The Commissioner contested the method of computing the rate of exchange but not the actual value of the stock.  The executor acquiesced on this issue, although other issues were litigated. Subsequently, after the children reached majority, they sold their stock and claimed a basis substantially in excess of that used for estate tax purposes.  The U.S. Court of Claims held that the duty of consistency did not estop the taxpayers from

asserting that the stock had a value in excess of that used for estate tax purposes. The court refused to bind the beneficiaries to the estate's valuation of the stock because the taxpayers were minors and had no knowledge of what was being written in their father's estate tax return in the United States. Id. at 22.[12]

A number of courts have distinguished Ford, finding that a taxpayer can, under appropriate circumstances, be estopped by a representation made by or on behalf of a related taxpayer. E.g., Hess v. United States, supra; Beltzer v. United States, supra; McMillan v. United Sates, supra. In Hess v. United States, supra at 464, the court distinguished its own decision in Ford, finding that the representation of an estate bound a testamentary trust created by the estate. In reaching this decision, the court found that, although the trust and the estate were separate legal entities, it was "fair and in accord with the spirit of law, to require the trust to act in a manner consistent with the estate", because the two entities were "very closely related." Id.

In Beltzer v. United States, supra at 212-213, the U.S. Court of Appeals for the Eighth Circuit held that a beneficiary was bound by an estate's representation, distinguishing the Ford case. In Beltzer, the taxpayer was a coexecutor of his father's estate. The taxpayer inherited stock which had been reported in

---

[12] Unlike the situation in Ford v. United States, 149 Ct. Cl. 558, 276 F.2d 17 (1960), petitioner was an adult and married to Elwood in 1989 when he signed the agreement.

the estate tax return as having a fair market value of $59,713 on the date of his father's death, September 22, 1959.  The time for adjustments and assessments against the estate expired on December 23, 1963.  On May 6, 1966, the taxpayer sold the shares for $140,000.  For purposes of determining his gain on the sale of the stock, the taxpayer asserted that the stock actually had a fair market value of $118,020 on the date of his father's death, despite the fact that he had signed the estate tax return at the lesser figure and had received the benefit of the lower estate tax.  The taxpayer argued that he should not be bound by the estate's representation of value, because he relied on his coexecutor to handle the estate tax return.  Rejecting the taxpayer's nonparticipation argument, the Court of Appeals held that the taxpayer was bound by the lower stock value reported by the estate under the duty of consistency.  Id. at 212.

The teaching from Hess, Beltzer, and the other cases which have found that a taxpayer may be estopped by a prior representation made by or on behalf of another taxpayer is that there must be a sufficiently close relationship between the party making the prior representation and the party to be estopped. Hess v. United States, supra at 464; Beltzer v. United States, supra at 212.  Whether there is sufficient identity between the parties will be dependent upon the facts and circumstances of the

particular case.[13]  In this case, we believe there is a sufficiently close relationship between the parties, since petitioner and her husband have closely aligned legal and economic interests.

Petitioner and Elwood filed a joint Federal income tax return for each of the tax years in issue and continued to do so for 1989, the year in which the stipulation of settled issues was executed by Elwood.  We have previously noted that filing a joint Federal income tax return generally results in tax savings to the husband and wife.  Benjamin v. Commissioner, 66 T.C. 1084, 1100 (1976), affd. 592 F.2d 1259 (5th Cir. 1979).  However, in accepting the benefit of filing jointly, the spouses also assume joint and several liability for the payment of any tax due.  Sec. 6013(d)(3).  By filing a joint income tax return, petitioner and Elwood entered into a joint economic arrangement, whereby they shared the benefits and burdens associated with filing a joint return.  In addition to their economic relationship, petitioner and Elwood were also in the legal relationship of marriage in 1989, when the stipulation was entered.  Here we have two individuals who have elected to be treated as a single taxpaying

---

[13]  We believe the flexibility inherent in such an approach comports with the spirit of our duty of consistency jurisprudence.  See Arkansas Best Corp. v. Commissioner, 83 T.C. 640, 659 (1984), affd. in part and revd. in part as to other issues 800 F.2d 215 (8th Cir. 1986), affd. 485 U.S. 212 (1988) (duty of consistency does not require the presence of all the technical elements of estoppel); Unvert v. Commissioner, 72 T.C. 807, 814 (1979) (to same effect), affd. 656 F.2d 483 (9th Cir. 1981).

unit.  Petitioner elected to be taxed not on her individual earnings and deductions (a treatment she could have chosen) but on the income and deductions of both spouses.  Her tax liability is therefore directly affected by her husband's stipulation in the Estate case, agreeing to the value of the Grapevine property. Petitioner's husband (not she) was the one who allegedly incurred the loss.  If the loss is unavailable to him as a carryforward, then it stands to reason that she is no more entitled to the loss than he is.  Under these circumstances, we hold that petitioner is bound by the representations contained in that agreement.

The remaining two elements of the duty of consistency standard are met.  Respondent was bound to follow the stipulation of settled issues, creating the necessary reliance by respondent. The third prong is met because petitioner is maintaining a position in this case which is inconsistent with the stipulation of settled issues, to respondent's detriment.  Since all three elements of the duty of consistency are satisfied, we hold that petitioner is bound to use $355,000 as Elwood's basis in the Grapevine property for purposes of determining the amount of gain he realized on the sale of such property.

We decline petitioner's invitation to redetermine the fair market value of the Grapevine property as of the date of Martha Cluck's death in 1983.  We will not disturb the agreement between respondent and Elwood, and we will not reexamine the stale evidence regarding the 1983 value of the Grapevine property.  See

Bartel v. Commissioner, 54 T.C. 25, 32 (1970). We find that Elwood had unreported capital gain of $264,425 ($619,425 amount realized over $355,000 basis). The effect of this ruling is that the portion of petitioner's 1987 and 1988 NOL's attributable to the 1984 loss carryforwards will be eliminated.

B. Additional Depreciation Deductions

Petitioner asserts that she is entitled to increase her claimed 1987 and 1988 NOL's to reflect certain depreciation and amortization deductions that were not claimed during the tax years 1984 to 1988. Respondent contends that petitioner has not substantiated her entitlement to such deductions.

Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving she is entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). A taxpayer is required to substantiate claimed deductions by maintaining the records needed to establish her entitlement to such deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 167 provides, in part, for a depreciation deduction with respect to property used in a trade or business. Depreciation allows the taxpayer to recover the cost of the property used in a trade or business or for the production of income. United States v. Ludey, 274 U.S. 295, 300-301 (1927); Southeastern Bldg. Corp. v. Commissioner, 3 T.C. 381, 384 (1944), affd. 148 F.2d 879 (5th Cir. 1945). To substantiate entitlement

to a depreciation deduction, the taxpayer must show that the property was used in a trade or business (or other profit-oriented activity). In addition, the taxpayer must establish the property's depreciable basis, by showing the cost of the property, its useful life, and the previously allowable depreciation. E.g., Delsanter v. Commissioner, 28 T.C. 845, 863 (1957), affd. in part and remanded in part 267 F.2d 39 (6th Cir. 1959).

To substantiate her entitlement to the additional amortization and depreciation deductions, petitioner presented testimony of her husband, Elwood, and a number of summary schedules. According to petitioner, the summary schedules, which were purportedly prepared by petitioner's accountant, substantiate her entitlement to the claimed deductions. Although petitioner indicated that the original documentation supporting the schedules (canceled checks and receipts) was in the courtroom, she did not offer it as evidence. In regard to this documentation, the revenue agent that audited petitioner's returns for the years at issue testified that he had, in the company of petitioner's accountant, attempted to reconcile the summary schedules with the alleged original documentation. According to the agent, the original information could not be reconciled with the summary schedules. Furthermore, it appeared to the agent that a number of the claimed depreciation deductions arose from assets that belonged to another person or entity.

We are not required to accept the unsubstantiated testimony of petitioner's husband, and we decline to do so. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The summary schedules provided by petitioner do not demonstrate her entitlement to the claimed deductions. Petitioner neither called the accountant who allegedly prepared the schedules to testify, nor offered any documentation underlying the schedules. This dual failure gives rise to the presumption that the evidence, if produced, would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Therefore, we hold that petitioner is not entitled to use the claimed depreciation and amortization deductions in the computation of her 1987 and 1988 NOL.

Issue 2. Addition to Tax--Failure To Timely File

Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date determined with regard to any extension of time for filing, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Calendar year individual taxpayers must file their Federal income tax return by April 15 following the close of the calendar year. Sec. 6072(a). The taxpayer bears the burden of proof on this issue. Rule 142(a).

To demonstrate that petitioner did not timely file her 1987 and 1988 returns, respondent introduced a Form 4340, Certificate of Assessments and Payments, for both 1987 and 1988, indicating

that petitioner filed her 1987 and 1988 tax returns on January 16 and September 7, 1990, respectively. Petitioner does not contend, at trial or on brief, that she timely filed her 1987 or 1988 Federal income tax return. Furthermore, she has not attempted to prove reasonable cause for her failure to file timely. Thus, we hold that petitioner is liable for the additions to tax under section 6651(a)(1).

Issue 3. Addition to Tax--Negligence

In her notice of deficiency, respondent determined that petitioner was liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1987 and section 6653(a)(1) for 1988. Petitioner asserts that her actions were not negligent and, therefore, she is not liable for such additions.

For 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Also for 1987, section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. For 1988, section 6653(a)(1) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment.

Negligence under section 6653(a) is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). The Commissioner's determination that the taxpayer's underpayment was due to negligence is presumed correct, and the taxpayer has the burden of proving that the determination is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). Thus, petitioner must show that she acted reasonably and prudently and exercised due care in reporting her taxes. Neely v. Commissioner, supra.

Here, petitioner has failed to present any evidence that she was not negligent in claiming the 1987 and 1988 NOL's. Accordingly, she has failed to meet her burden of proof; therefore, we affirm respondent's determination on this issue.

Issue 4. Addition to Tax--Substantial Understatement

Respondent determined that petitioner was liable for additions to tax pursuant to section 6661 for tax years 1987 and 1988.

Section 6661 provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayer bears the burden of proving that the Commissioner's determination

as to the addition to tax under section 6661(a) is erroneous. Rule 142(a).

An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return.  Sec. 6661(b)(2); <u>Tweeddale v. Commissioner</u>, 92 T.C. 501 (1989); <u>Woods v. Commissioner</u>, 91 T.C. 88 (1988).  An understatement is substantial if it exceeds the greater of $5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1).  The understatement is reduced, however, to the extent it is:  (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return.  Sec. 6661(b)(2)(B).

Petitioner made no arguments and presented no evidence regarding the substantial understatement additions to tax. Therefore, petitioner has failed to carry her burden of proof as to those items.  Accordingly, if the recomputed deficiency under Rule 155 attributable to those items satisfies the statutory percentage or amount, petitioner will be liable for such additions to tax.

To reflect the foregoing opinion and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>