T.C. Memo. 2000-296

UNITED STATES TAX COURT

LARRY WHITTINGTON, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RAY WHITTINGTON AND GLYNDA WHITTINGTON, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5208-96, 11955-96.     Filed September 21, 2000.

Richard D. Hall, Jr., and William B. Trevorrow, for petitioner in docket No. 5208-96.

Ray Whittington and Glynda Whittington, pro sese in docket No. 11955-96.

Ross A. Rowley and Paul G. Topolka, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge: By notices dated December 22, 1995, and March 12, 1996, respectively, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes:

Larry Whittington, docket No. 5208-96

| | | Additions to tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(2) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1985 | $54,635 | $2,732 | -- | [1] | -- | $13,659 |
| 1986 | 45,307 | -- | $2,265 | -- | [1] | 11,327 |
| 1987 | 48,182 | -- | 2,409 | -- | [1] | 12,046 |

[1] 50 percent of the statutory interest on the deficiency.

Ray and Glynda Whittington, docket No. 11955-96

| | | Additions to tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(2) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1985 | $30,740 | $1,537 | -- | [1] | -- | $6,550 |
| 1986 | 27,434 | -- | $1,372 | -- | [1] | 4,663 |
| 1987 | 41,243 | -- | 2,062 | -- | [1] | 9,079 |

[1] 50 percent of the statutory interest on the deficiency.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are whether petitioners are: (1) Entitled to exclude parsonage allowances from income; (2) subject to tax on certain income; (3) entitled to deduct certain charitable contributions; (4) liable for additions to tax for negligence; and (5) liable for additions to tax for substantial understatements of tax.

FINDINGS OF FACT

When their respective petitions were filed, Larry Whittington resided in North Charleston, South Carolina, and Ray and Glynda Whittington resided in Greensboro, North Carolina.

During the years in issue, Larry and Ray worked for Fountain of Life, Inc. (FOL), an evangelical organization established by their brother Jim Whittington. On January 1, 1976 and 1977, respectively, Ray and Larry were ordained as ministers of the Gospel by FOL. In addition to their ministerial duties, Ray was employed as FOL's secretary-treasurer, Larry was employed as FOL's vice president, and both were members of FOL's board of directors.

During the years in issue, FOL presented the Gospel through services, crusades, and publications. Daily services were conducted by Jim, Larry, and Ray and included sermons, songs, and the distribution of religious materials (e.g., pamphlets, books, albums, and cassettes). Jim, Larry, and Ray routinely officiated at marriages and funerals and provided counseling to FOL members. FOL had members who were not associated with any other religious organization or denomination. In addition, FOL conducted several crusades each month and developed a loyal group of followers. Some of the crusades were videotaped and later broadcast on "The Fountain of Life Presents Jim Whittington" television program, which at its peak was broadcast in 75 television markets.

The Whittingtons created a production plan for FOL events. To execute this plan, Larry founded Lovejoy Agency, Inc. (Lovejoy), a for-profit corporation, and Larry served as its president and a member of its board of directors. Lovejoy purchased television, radio, and newspaper advertisements for FOL events; made travel arrangements and leased facilities for FOL events; and produced FOL's television shows, albums, and cassettes.

To fund FOL operations, FOL solicited contributions through mass mailings. The mailings were also used to inform FOL members of scheduled FOL events, such as crusades, in their geographic area. FOL mailed approximately one-half million pieces of mail a month. To produce these mailings, Ray founded Whittington, Inc., a for-profit corporation. Whittington, Inc., bought equipment and prepared the mass mailings on behalf of FOL in exchange for fees from FOL.

During the years in issue, FOL paid Larry and Ray salaries, housing allowances, and other benefits (i.e., travel reimbursements, football tickets, and scholarship pledges). The salaries and housing allowances were authorized by FOL's board of directors before payment. The following chart delineates the payments from FOL to petitioners.

### Larry Whittington

| Scholarship Year | Salary | Housing Allowance | | | Travel Reimbursement | ECU Tickets[2] | Pledges[3] |
| | | Authorized | Paid | Expended[1] | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1985 | $88,400 | $52,000 | $61,600 | $57,108 | $20,421 | -- | -- |
| 1986 | 91,000 | 45,000 | 40,500 | 25,903 | 23,169 | $522 | $2,000 |
| 1987 | 88,000 | 45,000 | 55,500 | 25,608 | 20,825 | -- | 2,000 |

### Ray Whittington

| Scholarship Year | Salary | Housing Allowance | | | Travel Reimbursement | ECU Tickets[2] | Pledges[3] |
| | | Authorized | Paid | Expended[1] | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1985 | $88,400 | $52,000 | $48,100 | $35,738 | $2,606 | -- | -- |
| 1986 | 91,000 | 45,000 | 40,500 | 48,247 | 1,902 | $522 | $2,000 |
| 1987 | 88,000 | 45,000 | 58,000 | 25,733 | 4,300 | -- | 2,000 |

[1] The portion of the allowance expended for housing-related expenses.
[2] FOL purchased East Carolina University (ECU) football tickets for petitioners.
[3] FOL made scholarship pledges to ECU on behalf of petitioners.

In 1985, Whittington, Inc., issued three checks payable to Ray for $1,750 each, and Lovejoy issued six checks payable to Larry for $1,750 each. In April of 1987, Whittington, Inc., issued four checks payable to Ray or his creditors totaling $21,172.

On their respective Federal income tax returns, Larry claimed charitable deductions of $6,500, $15,751, and $26,500, and Ray claimed charitable deductions of $11,500, $28,362, and $18,300, relating to contributions to FOL in 1985, 1986, and 1987, respectively.

OPINION

I. Parsonage Allowances

Respondent determined that petitioners are not, pursuant to section 107, entitled to exclude from income parsonage allowances received from FOL. Section 107 provides that a minister of the Gospel may exclude from gross income a rental allowance paid to

him as part of his compensation, to the extent used by him to rent or provide a home. The accompanying regulations provide that the rental allowance must be provided as remuneration for ministerial services. See sec. 1.107-1(a), Income Tax Regs. Such services include the ministration of sacerdotal functions; the conduct of religious worship; and the control, conduct, and maintenance of religious organizations, under the authority of a religious body constituting a church. See sec. 1.1402(c)-5(b)(2), Income Tax Regs.

Respondent's only contention regarding section 107 is that FOL is not a "church" and, therefore, Ray and Larry were not ministers performing services under the authority of a church. We disagree. The term "church" is not defined in section 107 or the regulations thereunder. Nevertheless, we have previously stated:

> To classify a religious organization as a church under the Internal Revenue Code, we should look to its religious purposes and, particularly, the means by which its religious purposes are accomplished. * * * At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church. [Foundation of Human Understanding v. Commissioner, 88 T.C. 1341, 1357 (1987) (Court reviewed); citations and internal quotation marks omitted.]

FOL had a far-ranging ministry that reached its members through television and radio broadcasts, written publications, and

crusades.  FOL had loyal followers, some who attended worship services held regularly in Greenville, and others who attended crusades held regularly in various cities.  Many of FOL's members were not associated with any other religious organization or denomination.  In essence, FOL had the requisite body of believers, and, therefore, Ray and Larry performed services under the authority of a church.  In addition, Larry and Ray were "authorized to administer the sacraments, preach, and conduct services of worship" and were ordained ministers of the Gospel. Salkov v. Commissioner, 46 T.C. 190, 194 (1966).

The housing allowances are excludable only to the extent such allowances were authorized, paid, and expended for housing. See sec. 107(2).  Accordingly, Larry is allowed to exclude $52,000, $25,903, and $25,608, and Ray is allowed to exclude $35,738, $40,500, and $25,733, relating to 1985, 1986, and 1987, respectively.

## II.  Unreported Income

### A.  Payments From FOL

Respondent determined that Larry's and Ray's travel reimbursements were taxable income.  Generally, an employee is not required to report reimbursements received from an employer for travel expenses incurred by the employee, for the benefit of the employer, if the employee makes an "adequate accounting" to his employer.  Sec. 1.274-5(e)(2)(i), Income Tax Regs. (requiring

the taxpayer to provide the amount of the expense and the time, place, and business purpose of such travel). An employee who does not make an "adequate accounting" must report as income any travel reimbursements and will be entitled to deductions only to the extent that the employee can substantiate the expenditure. Sec. 1.274-5(e)(2), Income Tax Regs. If, however, the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, the taxpayer shall have the right to substantiate a deduction by reasonable reconstruction of the expenses. See sec. 1.274-5(c)(5), Income Tax Regs.

We hold that to the extent petitioners did not make an adequate accounting they substantiated the related deductions. Petitioners presented credible testimony relating to this issue and adequately substantiated and reconstructed their travel expenses. Respondent took possession of, and limited petitioners' access to, their records. Consequently, petitioners' failure to produce more adequate records is due to circumstances beyond their control.

FOL, in 1986, purchased ECU football season tickets for Jim, Ray, and Larry, and, in 1986 and 1987, made scholarship pledges to ECU on behalf of Ray and Larry. A third party's payment of a taxpayer's personal expenses is income to the taxpayer. See sec. 61; Coors v. Commissioner, 60 T.C. 368, 407-409 (1973), affd. 519

F.2d 1280 (10th Cir. 1975). These payments were for petitioners' personal benefit, and, accordingly, are income.

  B.  <u>Payments From Whittington, Inc., and Lovejoy</u>

  In 1985, Ray received three $1,750 checks from Whittington, Inc., and Larry received six $1,750 checks from Lovejoy. On the memo line of each of these checks, notations were made indicating a $2,500 salary payment and purported withholdings of $750. In 1987, Whittington, Inc., issued four checks payable to Ray or his creditors totaling $21,172. Respondent determined that, in 1985, Ray and Larry received income of $2,500 relating to each check with the aforementioned notation, and that, in 1987, Ray was subject to tax on the payments from Whittington, Inc. Conversely, petitioners contend that these checks related to repayment of loans Ray made to Whittington, Inc., and Larry made to Lovejoy. We reject respondent's and petitioners' positions relating to the $2,500 payments and hold that petitioners are subject to tax on $1,750 relating to each check. In addition, we sustain respondent's determination relating to the 1987 payments.

III.  <u>Charitable Contribution Deductions</u>

  Respondent determined that petitioners may not deduct charitable contributions to FOL. Section 170(a)(1) allows as a deduction any charitable contribution as defined in subsection (c). Section 170(c) defines a charitable contribution as a gift to a corporation "no part of the net earnings of which inures to

the benefit of any private shareholder or individual".  Sec.
170(c)(2)(C); <u>McGahen v. Commissioner</u>, 76 T.C. 468, 481 (1981)
(stating that the taxpayer "must prove that the recipient
qualified under section 170(c)(2)").  We have found that, during
the years in issue, Larry and Ray received certain payments from
FOL (i.e., unauthorized payments, football tickets, and
scholarship pledges).  These payments inured to the benefit of
petitioners.  In addition, petitioners failed to establish that
these payments were compensation or were from a source other than
FOL's net earnings.  Accordingly, petitioners are not allowed the
claimed charitable deductions.

IV.  <u>Additions to Tax for Negligence</u>

Respondent determined that petitioners were liable for
additions to tax for negligence under section 6653(a)(1) and (2)
relating to 1985 and section 6653(a)(1)(A) and (B) relating to
1986 and 1987.  Petitioners did not exercise due care in
reporting their tax liabilities.  Accordingly, they are liable
for the additions to tax for negligence.

V.  <u>Additions to Tax for Substantial Understatement</u>

Respondent determined that, pursuant to section 6661,
petitioners were liable for additions to tax for substantial
understatements during the years in issue.  An understatement is
substantial if it exceeds the greater of $5,000 or 10 percent of
the amount of tax required to be shown on the return.  See sec.

6661(b).  Petitioners' understatements were not based on substantial authority or adequately disclosed.  Accordingly, if the recomputed deficiencies satisfy the statutory percentage or amount, petitioners will be liable for those additions to tax.  See, e.g., <u>Cluck v. Commissioner</u>, 105 T.C. 324, 340 (1995).

All other contentions raised by the parties are either moot, meritless, or irrelevant.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.