T.C. Memo. 2002-306

UNITED STATES TAX COURT

GEORGE J. MANTAKOUNIS AND SOPHIA MANTAKOUNIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5888-01.                    Filed December 17, 2002.

<u>Ronald D. Ashby</u>, for petitioners.

<u>Jack T. Anagnostis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $34,106
in petitioners' Federal income tax for 1991.  Respondent also
determined an addition to tax of $10,024 under section 6651(a)(1)
and a penalty of $6,821 under section 6662(a).  The issues for
decision are:  (1) Whether petitioners failed to report $105,000
in income, (2) whether petitioners are liable for an addition to

tax under section 6651(a), and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Petitioners resided in Springfield, Pennsylvania, at the time they filed their petition. Petitioners had been married for 45 years at the time of trial. John T. Mantakounis (J. Mantakounis), father of George J. Mantakounis (petitioner), resided in an apartment house in Philadelphia, Pennsylvania, owned by petitioner's sister. J. Mantakounis spent his time in Philadelphia and in Greece. J. Mantakounis died in Icaria, Greece, on January 16, 2000.

In 1991, petitioners traveled to Holiday, Florida, to purchase a home. Settlement of the purchase transaction occurred on March 6, 1991. The purchase price was $160,000, with $143,746.10 due at closing. In connection with this purchase, petitioners engaged in a $105,000 cash transaction. On March 4, 1991, petitioners bought a cashier's check in the amount of

$102,876.50 from the Barnett Bank of Pasco County, Florida, and used the remaining funds to obtain a certificate of deposit.

Petitioners filed a joint Federal income tax return for 1991 reporting taxable income of $42,130. Petitioners received an extension for filing of their 1991 return until October 15, 1992, and filed their return on January 21, 1993.

Respondent commenced an examination of petitioners' 1991 joint return in December 1995. A Form 4789, Currency Transaction Report (CTR), filed by Barnett Bank had shown petitioners' $105,000 cash transaction, which was not included in petitioners' gross income for 1991.

On April 10, 1996, Revenue Agent Helen Moore (Moore) interviewed petitioner in his accountant's office. Petitioner told Moore that, in 1990, he found a box of cash in his father's house in Philadelphia. Petitioner then told Moore that he took the money to Florida to purchase the Florida home.

On December 27, 1996, petitioners sold a house they owned in Springfield, Pennsylvania, to their son for $261,500, receiving a check from the title company for $261,536.38. On January 14, 1997, petitioner wrote a check to J. Mantakounis for $154,000 from petitioners' joint bank account.

Moore issued her report on January 16, 1997, proposing an adjustment to income of $105,000. After petitioners retained their current counsel, counsel for petitioners told Moore that

the $105,000 was a loan from J. Mantakounis to petitioners, and not cash that petitioner found in a box. On July 25, 1997, petitioners' attorney produced to Moore a "note", the $154,000 check to J. Mantakounis, and the settlement sheet for the Springfield property as evidence of the loan.

On April 15, 1999, petitioner met with Appeals Officer Walter Lyons (Lyons). At this meeting, petitioner denied that he ever mentioned finding the money in a box in his father's house. Petitioner stated that J. Mantakounis sold property in Greece and that funds from that sale were loaned to petitioner. Petitioner first told Lyons that J. Mantakounis loaned him the money in Philadelphia. He later claimed that his father gave the cash to petitioner in Florida.

On January 24, 2001, respondent sent to petitioners a notice of deficiency for 1991. Respondent determined that the $105,000 was unreported income, increasing petitioners' taxable income accordingly.

## OPINION

### Unreported Income

Generally, the taxpayer bears the burden of disproving the Commissioner's determination. Rule 142(a); see Welch v. Helvering, 290 U.S. 111, 115 (1933); Clayton v. Commissioner, 102 T.C. 632, 645 (1994). Petitioners, however, argue that here the burden shifted to respondent under section 7491 because

petitioners introduced credible evidence that the cash transaction was a loan. Section 7491 applies only to court proceedings arising in connection with examinations commencing after July 22, 1998 and thus does not apply to this case. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 726, 727. In any event, as set forth below, we do not accept petitioner's testimony as credible. Petitioners further argue that respondent must put forth evidence that the cash transaction was not a loan and must show some link between the transaction and petitioner's business.

A bank deposit is prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see Clayton v. Commissioner, supra at 645; DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The bank deposits method of reconstruction assumes that all money deposited to a taxpayer's account is taxable income, unless the taxpayer can show a nontaxable source for the income. See DiLeo v. Commissioner, supra at 868. Respondent need not show a likely source of the income. Tokarski v. Commissioner, supra at 77.

Here, there is no requirement that respondent produce evidence linking petitioners to an income-producing activity because, as in Tokarski v. Commissioner, supra at 76, there is no question that petitioners actually received the money. Although petitioners applied part of the funds to the purchase of the

cashier's check and deposited the balance into an account, this distinction is irrelevant to our analysis. It is undisputed that petitioners engaged in the transaction and had use of the money. Although petitioners were notified by the Court at trial that Tokarski was directly on point and would be the basis of our analysis, petitioners' brief failed to address the case or otherwise negate its persuasiveness. (Petitioners' brief failed to comply with the requirements of Rule 151(e) by neglecting to discuss any applicable legal authority and failing to include proposed findings of fact.)

Petitioner offered inconsistent information during examinations and conflicting testimony at trial regarding the 1991 transaction. Moore and Lyons both gave credible testimony, and both took contemporaneous notes of their interviews with petitioner. Petitioners were unable directly to contradict Moore's and Lyons's testimony about the examinations because petitioner repeatedly stated that he did not remember his conversations with them. We have no reason to doubt their credibility and have found as fact their versions of what occurred.

During trial, petitioner testified in response to questions from his counsel:

> Q      In 1991, how old was your dad?
>
> A      In his eighties somewhere.

Q       Okay.  Now, do you take him to Florida to see the property you're about to purchase?

A       Well, we talked about it before, and he said I'd like to see it.  I said wonderful.

He came down with us, knowing full well that--we had talked before.  Knowing full well that he was going to loan me a sum of money to purchase this property, and I would put in the additional sum.

Q       The discussion about the loan, did that occur here in Philadelphia?

A       Yes.

Q       And your father was going to Florida to what?

A       Just look at the house with us.

Q       Was it your understanding that if he approved of the house he would then give you the money for the loan?

A       Yes.

Q       If he didn't approve of the house, he wouldn't give you the money?

A       That's true.

Q       How long did it take you and your 81-year-old dad and your wife to go to Florida?

A       Two days.

Q       So you leave somewhere right around the end of February?

                  *   *   *   *   *   *   *

Q       Mr. Mantakounis, after your father viewed the property, what, if anything, did he do?

A       He liked the property, and he said buy it.  Here's the money.  Go make settlement.

It is improbable that J. Mantakounis would personally carry $105,000 cash to Florida. Although petitioner claims to have been aware that his father was carrying the cash, no security precautions were taken. In addition, Mrs. Mantakounis did not testify regarding the transaction and the trip that J. Mantakounis took to Florida, even though she was present at the time and at trial.

Petitioner's testimony concerning the "note" was replete with factual inconsistencies. The note was not in the form of a promissory note. The note refers to three different amounts: $95,000 payable on demand, $50,000 payable on demand, and $9,000. Petitioner was vague in answering respondent's questions at trial concerning whether J. Mantakounis gave him $105,000 in cash or the $95,000 referred to in the note. Petitioner was also inconsistent in describing exactly what the other two amounts in the note were.

Although petitioner testified that he had the note when he first met with Moore in 1995, he did not show it to her at that time. The alleged "loan" was "repaid" during the time that the examination was nearing conclusion, after a transaction with petitioners' son. It was not until after petitioners had retained their current counsel, in 1997, that the note was produced. Overall, petitioner's direct testimony was in response

to leading questions by his counsel, and his testimony on cross-examination was vague and evasive.

Petitioners argue that a different result in this case would have followed if respondent had interviewed J. Mantakounis prior to his death regarding the loan. Presumably, petitioners believe that J. Mantakounis's testimony would have proved the existence of the loan. We are not required, however, to accept self-serving, unverified, and uncorroborated statements of petitioner or of his parent. Tokarski v. Commissioner, 87 T.C. at 77; see Cluck v. Commissioner, 105 T.C. 324, 338 (1995). Considering the belated and inconsistent explanations provided by petitioner before and during trial, we do not accept his testimony. We uphold respondent's determination that the $105,000 was unreported income.

Addition to Tax and Penalty

Respondent determined an addition to tax for failure to file timely under section 6651(a)(1) and an accuracy-related penalty for substantial understatement under section 6662(a). Petitioners have presented neither evidence nor argument regarding the addition to tax and penalty.

Respondent determined the addition to tax for late filing because, although petitioners were granted an extension to file until October 15, 1992, they did not file until January 21, 1993. To escape the addition to tax for filing late returns,

petitioners have the burden of proving that the failure to file did not result from willful neglect and that the failure was due to reasonable cause. See <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). Because petitioners failed to present any explanation of their late filing, they remain liable under section 6651.

Section 6662 imposes a penalty for substantial understatement of tax liability if the understatement exceeds the greater of 10 percent of the correct tax or $5,000. See sec. 6662(d)(1)(A) and (B). The term "understatement" is defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax shown on the return for the taxable year. Sec. 6662(d)(2)(A). In view of our determination that petitioners underreported their income by $105,000, a prima facie case exists for imposition of the penalty. Because petitioners failed to present any evidence or argument that the penalty was incorrectly imposed, we uphold respondent's determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.