T.C. Memo. 2005-136


UNITED STATES TAX COURT


JAMES S. SPARKMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MERCURY SOLAR PTO, AMANDA MCKEOGH, TRUSTEE, Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8400-03, 8650-03.    Filed June 13, 2005.


<u>Paul J. Sulla, Jr.</u>, for petitioners.

<u>Henry E. O'Neill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  Respondent determined the following deficiencies, additions to tax, and penalties with respect to petitioner James S. Sparkman (Sparkman):

Additions to Tax/Penalties

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|------|-----------|-----------------|--------------|
| 1996 | $231,570.00 | $57,892.50 | $46,314.00 |
| 1997 | 519,659.00 | 29,914.75 | 103,931.80 |
| 1998 | 721,699.00 | 180,424.75 | 144,339.40 |
| 1999 | 605,972.00 | 90,895.80 | 121,194.40 |
| 2000 | 491,618.00 | --- | 98,323.60 |

Respondent determined the following deficiencies, additions to tax, and penalties with respect to petitioner Mercury Solar PTO ("Pure Trust Organization")[1]:

Additions to Tax/Penalties[1]

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6662(a) |
|------|-----------|-----------------|-----------|--------------|
| 1996 | $203,496.6 | $50,874.16 | --- | $40,699.32 |
| 1997 | 479,840.46 | 119,960.12 | --- | 95,968.09 |
| 1998 | | 169,994.56 | --- | 135,995.64 |
| 1999 | | 138,455.81 | $26,574.40 | 110,764.64 |
| 2000 | | --- | --- | 87,532.24 |

[1] Respondent also imposed a sec. 6651(a)(2) addition to tax on Mercury Solar PTO for the 1999 tax year, in an amount to be computed later.

---

[1] For convenience, we use the term "trust" to reflect the characterization of Mercury Solar PTO and Hawaii Environmental Holdings (HEH) asserted by petitioners and set forth in formation documents and business records. The use of this term (and of related terms such as "trustee" and "beneficial owner") is not intended to be conclusive as to characterization for tax purposes.

Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent, the issues for decision in these consolidated cases are:  (1) Whether Mercury Solar PTO should be disregarded as an entity separate from Sparkman for Federal tax purposes and its net income attributed to Sparkman for the years at issue; (2) whether in 1999 Mercury Solar PTO (and hence Sparkman) had unreported income resulting from certain rebate payments from Hawaii Electric Company (HECO); (3) whether for the years at issue Sparkman is liable for self-employment tax on his earnings from Mercury Solar PTO;[2] (4) whether for the years at issue Sparkman is entitled to claimed losses from a purported business trust, Hawaii Environmental Holdings (HEH); (5) whether Sparkman is entitled to additional itemized deductions, allegedly not claimed on his Federal income tax returns, for interest or charitable contributions; and (6)

---

[2] The amount of Sparkman's liability for self-employment taxes and the amount of the related deduction under sec. 164(f) to which Sparkman is entitled are computational matters. Resolution of these issues depends upon our resolution of the issue whether Mercury Solar PTO should be recognized as an entity separate from Sparkman.  Petitioners have not separately challenged such liability, and we do not further discuss these items.

whether petitioners are liable for additions to tax and penalties.[3]

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein by this reference.[4] When the petitions were filed, Sparkman resided in Honolulu, Hawaii, and Mercury Solar PTO had a mailing address in Honolulu, Hawaii.

Sparkman's Sole Proprietorship

About 1983, Sparkman began selling solar water heating systems to homeowners in Hawaii. For some 10 years, he operated as a sole proprietor under the name "Mercury Solar", which he had registered with the State of Hawaii.

Hawaii Environmental Holdings

In 1993, Sparkman purported to transfer his Mercury Solar business into a newly created entity, HEH. According to a document entitled "Contract and Declaration of Creation of Unincorporated Business Organization" (the HEH formation document), HEH was created on June 1, 1993, as an "unincorporated

---

[3] Respondent appears to concede that if Mercury Solar PTO is disregarded for Federal tax purposes, it should not be subject to deficiencies, additions to tax, or penalties.

[4] The parties have stipulated the transcripts from trials in the cases of Richter v. Commissioner, T.C. Memo. 2002-90, and Hvidding v. Commissioner, T.C. Memo. 2003-151, each of which dealt with the tax treatment of HEH customers. At the trial of the instant cases, counsel for both parties agreed that the Court may consider testimony given in Richter and Hvidding "as if that testimony was presented to the Court in this case."

business organization" domiciled in "the Sovereign State of Nevada". This document identifies the "Creator" of the trust as "S. Siegert", who is not otherwise identified in the record. The document recites that in exchange for "twenty-five dollars of silver, Certificates comprising a total of one hundred units, and other full and adequate consideration" the "Exchanger or Exchangers" will convey to the Creator certain property listed in Schedules A and B, attached to the document.

Schedule A to the HEH formation document recites that Sparkman conveyed to the Creator, in exchange for "Certificates of Evidence of Right of Distribution, comprising a total of fifty units" (plus "twenty-five dollars of silver" and other "good and valuable consideration") "real property" described as follows:

> The Vehicles Belonging TO MERCURY SOLAR (trucks)[.]
> Tools and Necessary Business Equipment[,] computers
> etc. The Real estate known as the "'Kagel Canyon'"
> properties consisting of seven lots and one house
> located on one of the seven lots.

Schedule B to the HEH formation document recites that Sparkman conveyed to the Creator, in exchange for "Certificates of Evidence of Right of Distribution, comprising a total of fifty units" (in addition to "twenty-five dollars of silver" and other "good and valuable consideration") "personalty", described as follows:

> MERCURY SOLAR, The Business Name as Registered with
> Business Registration.
> All PAST Business Files

Accordingly, taking into account the 50 units referenced in Schedule A and the 50 units referenced in Schedule B, Sparkman was allocated all 100 units of HEH certificates, as authorized by the HEH formation document.[5]  The HEH formation document and attachments thereto reflect no other contributions to HEH and the issuance of no other certificates of HEH units.

The HEH formation document recites that upon completion of these exchanges, the Creator "shall constitute and appoint a suitable adult" as trustee, who may appoint additional trustees, to constitute a Board of Trustees.  The document recites that the property of HEH will then be assigned to the Board of Trustees, and the Creator will thereafter have "absolutely no further obligation" to HEH.  The document recites that the trustees will have "exclusive management and control of * * * [HEH's] property and business affairs without any consent of Certificate holders" and will have the authority to, among other things, distribute "proceeds and income in their discretion, and according to the

---

[5] With respect to the certificates, the HEH formation document states:

> For convenience the Certificates used for evidencing right of distribution shall be divided into One Hundred Units.  They shall be non-assessable, non-taxable and non-negotiable * * *.

> Ownership of Certificates shall not entitle the holder to any legal or equitable title in or to the * * * [HEH] property, nor any undivided interest therein, nor in the management thereof * * * .

* * * [HEH] minutes". The document recites that the trustees may elect or appoint managing directors or agents to "hold funds for specific purposes".

A document entitled "Minutes of Hawaii Environmental Holdings", signed June 1, 1993, states that the Creator, S. Siegert, appoints Lee Allan Hansen as trustee.[6] These minutes also state: "At a regular meeting of the Board of Trustee(s), it was suggested and unanimously approved" that Sparkman be appointed "Agent" of HEH.[7] These minutes further state:

> The nature of his [Sparkman's] title will be that of President, and his responsibilities are to open bank accounts, act as the official authorized signature [sic] on said bank accounts and to operate the company to the same extent as if he were the owner.

The HEH minutes state that one of the goals of HEH is "the sale of solar energy". The minutes state in part:

> HEH shall * * * seek a tax shelter and advantageous tax structure.

> The trust will own all solar energy equipment held in trust. * * *

> The trustee will have complete discretion as to the means used to accomplish the trust's goals. This will include distribution of the tax credits and depreciation * * *.

---

[6] Lee Allan Hansen is not otherwise identified in the record.

[7] Inasmuch as the sole trustee was purportedly appointed the same day, it seems unlikely that Sparkman's appointment as agent was at the suggestion and unanimous approval of the "Board of Trustees".

* * * All profits will be sheltered or passed to the
individual beneficiaries as determined by the trustees.

HEH minutes dated August 4, 1993, indicate that Lee Allan Hansen appointed Mandy Wildman as trustee.  Mandy Wildman was, as Amanda Jane Porter (Porter) testified, Porter's "film or stage name".[8]  Porter testified that she married Sparkman in 1993 or 1994 for "Probably about a year."  After their divorce, she moved to California.  Since 1998, she has resided in Florida, where she is in the film business.

HEH minutes dated August 10, 1994, and signed by Porter (who, as just indicated, was Sparkman's spouse at or about this time) as "A. Jane Howat", ostensibly in her capacity as HEH trustee, indicate that in HEH's organizational documents, all references to an "Unincorporated Business Organization" would be changed to "Pure Trust Organization"; all references to "Trustee(s)" would be changed to "Fiduciary Owners(s)"; and the number of authorized units of Evidence of Right of Distribution would be increased from 100 to 2,000.  In addition, the August 10, 1994, HEH minutes, signed by A. Jane Howat, state:

    BE IT RESOLVED THAT the Board of Trustees shall exchange
    the assets of HAWAII ENVIRONMENTAL HOLDINGS' Dba MERCURY
    SOLAR for 100 units of Evidence of Right of Distribution

---

[8] Amanda Jane Porter (Porter), who at the time of trial had been married six times, acknowledged using various names at various times, including:  Amanda Wildman, Amanda McKeough, Amanda J. McKeough-Porter, Amanda Jane Porter, Mandy Porter, A. Jane Howat, and Amanda Sparkman.

of a Pure Trust Organization to be named:  MERCURY SOLAR.

HEH minutes dated May 21, 1996, recite that Lee Allan Hansen appointed Cynthia Kay McNeff and Sparkman as trustees and that Mandy Wildman was removed as trustee.[9]  HEH minutes dated May 18, 1998, recite that Cynthia Kay McNeff was removed as a trustee of HEH and Sparkman was "assigned complete control regarding the current IRS issue.  James Scott Sparkman is to act as sole Trustee/Fiduciary in dealing with the Internal Revenue Service." HEH minutes dated May 30, 1999, indicate that Lee Allan Hansen resigned as trustee, leaving Sparkman as sole trustee of HEH. HEH minutes dated December 20, 2001, state that Sparkman appointed Shon Gregory as an additional trustee of HEH.[10]

Purported Creation of Mercury Solar PTO

As previously noted, in 1994 HEH purported to transfer the Mercury Solar business to Mercury Solar PTO.  The formation documents for Mercury Solar PTO are in key respects identical to those for HEH (except for different verbiage reflecting the characterization of HEH as an "unincorporated business organization" and of Mercury Solar PTO as a "pure trust organization".)

---

[9] Cynthia McNeff is identified in the record only as "an attorney".

[10] The record does not further identify Shon Gregory.

According to a document entitled "Contract and Declaration of Creation of Pure Trust Organization" (the Mercury Solar PTO formation document), Mercury Solar PTO was created on July 15, 1994, as a "Pure Trust Organization" domiciled in "the Sovereign State of Nevada". The document identifies the "Creator" of the trust as "S. Siegert", who is not otherwise identified in the record. The document recites that in exchange for "twenty-five dollars of silver, Certificates comprising a total of one hundred units, and other full and adequate consideration", the "Exchanger or Exchangers" will convey to the Creator certain property listed in schedules A and B attached to the document.

Schedule A to the Mercury Solar PTO formation document recites that A. Jane Howat (who, under one name or another, was Sparkman's spouse at or about this time), ostensibly as trustee of HEH, conveyed to the Creator of Mercury Solar PTO, in exchange for "Certificates of Evidence of Right of Distribution, comprising a total of one hundred units" (in addition to "twenty-five dollars of silver" and other "good and valuable consideration") "real property", described as follows:

> THE BUSINESS IN its entire CApacity. TRUCKS, TOOLS, outSTANDiNG CONTRActS, ReceiVABles, DeBts AND TRADe NAME AS MERCURY SOLAR UBO.

Schedule B to the Mercury Solar PTO formation document recites that A. Jane Howat conveyed to the Creator of Mercury Solar PTO, in exchange for "Certificates of Evidence of Right of

Distribution, comprising a total of one hundred units" (in addition to "twenty-five dollars of silver" and other "good and valuable consideration") "personalty", described as follows: "MERCURY SOLAR".[11]

The Mercury Solar PTO formation document recites that upon completion of these exchanges, the Creator "shall constitute and appoint a suitable adult" as first "Fiduciary Owner", who may appoint additional "Fiduciary Owners", to constitute a "Board of Fiduciary Owners".  The document recites that the property of Mercury Solar PTO will then be assigned to the "Board of Fiduciary Owners", and the Creator will thereafter have "absolutely no further obligation" to Mercury Solar PTO.  The document recites that the "Fiduciary Owners" will have "exclusive management and control of the PTO's property and business affairs without any consent of Certificate holders" and will have the authority to, among other things, distribute "proceeds and income in their discretion, and according to the PTO minutes".  The document recites that the "Fiduciary Owners" may elect or appoint managing directors or agents to "hold funds for specific purposes".

A document entitled "Minutes of Mercury Solar" states that the Creator, S. Siegert, appoints J. Clark Atkinson as "Fiduciary

---

[11] Accordingly, taking into account the 100 units referenced in Schedule A and the 100 units referenced in Schedule B, it would appear that HEH was allocated a total of 200 units of Mercury Solar PTO certificates, even though the Mercury Solar PTO formation document authorized only a total of 100 units.

Owner".[12]  This document was signed by S. Siegert on July 15, 1994, and by J. Clark Atkinson on July 18, 1994.  Mercury Solar PTO minutes, signed by Atkinson on July 18, 1994, and by Sparkman on July 20, 1994, state:  "At a regular meeting of the Board of Fiduciary Owner(s), it was suggested and unanimously approved" that Sparkman be appointed "Agent" of Mercury Solar PTO.[13]  These minutes state:

> The nature of his [Sparkman's] title will be that of President, and his responsibilities are to open bank accounts, act as the official authorized signature [sic] on said bank accounts and to operate the company to the same extent as if he were the owner.

According to a document entitled "CERTIFICATE RECORD FOR MERCURY SOLAR", the 100 beneficial units that had purportedly been assigned to HEH on July 15, 1994, were "Released" on July 25, 1994.  Also on July 25, 1994, 100 units were "Assigned" to Sparkman.

Mercury Solar PTO minutes dated April 29, 1998, state that J. Clark Atkinson appointed Amanda McKeough (Sparkman's ex-spouse) as

---

[12] J. Clark Atkinson is not otherwise identified in the record.

[13] Inasmuch as J. Clark Atkinson purportedly became "Fiduciary Owner" on July 18, 1994, and inasmuch as the record reflects no other "Fiduciary Owner" of Mercury Solar PTO as of that date, it seems unlikely that Sparkman was suggested as agent and unanimously approved by the "Board of Fiduciary Owner(s)" on July 18, 1994.

"trustee".[14]  Mercury Solar PTO minutes dated May 5, 1998, state that J. Clark Atkinson resigned as "Fiduciary Owner".[15]  Mercury Solar PTO minutes dated July 20, 1998, state:  "At a meeting of the Board of Trustees of Mercury Solar,"[16] Myron Thompson was appointed "Operations Manager" of Mercury Solar PTO, with responsibility for "managing the day to day activities of the company".  Myron Thompson resigned in June 2001.

Operations of HEH and Mercury Solar PTO

HEH purports to sell solar energy to customers through a program where HEH agrees to sell, and the customer agrees to buy, the energy produced from solar water heating system components purportedly owned by HEH and installed on the customer's property. See Hvidding v. Commissioner, T.C. Memo. 2003-151.  The participating customer signs an agreement providing that the customer shall become a beneficiary of HEH, that the HEH trustee shall have the discretion to pass solar energy tax credits through to the customer, and that such passthroughs shall be reported on Schedules K-1, Beneficiary's Share of Income, Deductions, Credits, etc. (Schedule K-1).  Id.

---

[14] The purported formation documents of Mercury Solar PTO contain no provision for the appointment of any "trustee".

[15] Consequently, reading the documents in the record strictly, as of May 5, 1998, Mercury Solar PTO no longer had any "Fiduciary Owner".

[16] The Mercury Solar PTO formation documents contain no provision for any "Board of Trustees."

According to Sparkman's testimony, HEH did not sell solar energy equipment. If HEH received customer interest in buying equipment, rather than entering into an energy contract, HEH might refer the customer to "Mercury Solar" or to another retailer. Sparkman testified that HEH buys its equipment from "Mercury Solar" or from one of two other suppliers. He testified that HEH would sometimes sell used equipment to "Mercury Solar".

Attempting to delineate the different roles of HEH and "Mercury Solar", Myron Thompson testified:

> Mercury Solar is really just a contractor, it's a solar contractor. It basically was contracted to put solar panels and hot water heaters in homes and that kind of thing. So that's what our function was. HEH had another function of contracting Mercury Solar to do that for the purposes of selling energy and things like that.

HEH had no employees. HEH and Mercury Solar PTO shared common office space. Mercury Solar PTO did not have its own specialty contractor license as required by State law; instead, it used Sparkman's license.

Rebate Income

For the tax year 1999, Hawaii Electric Company (HECO) issued to Mercury Solar PTO a Form 1099, Non-Employee Compensation, reporting payments of $195,275.

Federal Tax Returns

On or around June 20, 2000, Sparkman filed individual Federal income tax returns for the years 1996 through 1999. On or around March 26, 2001, he filed his 2000 Federal income tax return.

On Schedule E of these returns, Sparkman reported income or loss from HEH and Mercury Solar PTO as follows:

|      | HEH        | Mercury Solar PTO |
|------|------------|-------------------|
| 1996 | ($63,200)  | $74,985           |
| 1997 | (66,000)   | 70,062            |
| 1998 | (46,003)   | 51,130            |
| 1999 | (56,654)   | 53,110            |
| 2000 | (68,191)[1]| 126,747           |

[1] The $68,191 loss nets two items shown on Sparkman's 2000 Schedule E:  a $75,000 deduction or loss from HEH, and $6,809 "Other income" from HEH.

On September 4, 2001, Sparkman filed an amended return for his 1999 tax year.  On Schedule E of this amended return, he reported losses from HEH in the amount of $54,400, income from HEH in the amount of $37,930, and income from Mercury Solar PTO in the amount of $60,766.

Mercury Solar PTO filed Federal income tax returns for the years 1996 through 1998 on or around July 26, 2000, and returns for the years 1999 and 2000 on or around March 27, 2001.  On July 24, 2003, it filed amended returns for the tax years 1996 through 1998.  For all years in issue, it filed Forms 1041, U.S. Income Tax Return for Estates and Trusts.  In the entity classification section for each of Mercury Solar PTO's returns, the box for "Complex trust" is checked.  Attached to Mercury Solar PTO's tax returns are Schedules K-1.  For each year at issue except for 1999, the Mercury Solar PTO tax return includes a single Schedule K-1 showing income distributions to Sparkman in

amounts consistent with those reported on Schedule E of his individual Federal income tax returns.  For 1999, the Mercury Solar PTO tax return includes two Schedules K-1:  One showing $55,734 of income distributed to Sparkman and another showing $33,600 of income distributed to Thompson.

HEH filed its Federal income tax return for 1996 on or around March 30, 2001, and filed its 1997 Federal income tax return on or around May 22, 2002.  HEH filed Federal income tax returns for its 1998, 1999, and 2000 tax years on or around June 2, 2004 (only shortly before the trial in these cases).  HEH filed its Federal tax returns using Forms 1041.  In the entity classification section for each of HEH's returns, the box for "Complex trust" is checked.

Notices of Deficiency

Respondent issued Sparkman a notice of deficiency for his taxable years 1996 through 2000.  Respondent determined that Mercury Solar PTO is a sham with no economic substance and should be disregarded for tax purposes.[17]  In the notice of deficiency,

---

[17] Respondent also raised three alternative arguments in Sparkman's notice of deficiency:  (1) That Sparkman's business income should be increased because Mercury Solar PTO is a grantor trust whose income is taxable to Sparkman individually; (2) that if Mercury Solar PTO is recognized for income tax purposes, Sparkman's income should be increased to the extent required by sec. 652(a) or 662(a); and (3) that Sparkman's attempted assignment of income to Mercury Solar PTO is not recognized for Federal tax purposes.  Respondent has not pressed these alternative arguments in this Court proceeding; consequently, we
(continued...)

respondent increased Sparkman's business income by the gross receipts of Mercury Solar PTO, including $195,275 of rebate income that HECO reported on a Form 1099 to Mercury Solar PTO. In addition, respondent disallowed losses that Sparkman reported as flowing through from HEH on the ground that Sparkman had failed to substantiate these amounts. Respondent determined that the increases to Sparkman's income resulting from these adjustments were subject to self-employment tax. Finally, respondent determined penalties and additions to tax pursuant to sections 6651 and 6662.

By separate notice of deficiency issued to Mercury Solar PTO, respondent disallowed all of Mercury Solar PTO's claimed deductions and made other adjustments increasing Mercury Solar PTO's reported income. Among other adjustments, respondent increased Mercury Solar PTO's 1999 income by $195,275, to reflect the HECO rebate payments.

OPINION

I. Burden of Proof

Petitioners have not claimed or established that section 7491(a) shifts the burden of proof to respondent with respect to any factual issue. Accordingly, petitioners bear the burden of

---

[17](...continued)
do not address them.

proof and production for all issues, except as provided by section 7491(c). See Rule 142(a).

II. Disregard of Mercury Solar PTO as a Separate Entity

Respondent argues that Mercury Solar PTO should be disregarded as a separate entity for Federal tax purposes because it lacks economic substance and is a sham.[18] We agree.

If the creation of a trust lacks economic effect and alters no cognizable economic relationship, we may ignore the trust as a sham. See, e.g., Zmuda v. Commissioner, 79 T.C. 714, 720 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980); Muhich v. Commissioner, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001). To determine whether a trust lacks economic substance for tax purposes we consider these factors: (1) Whether the taxpayer's relationship to the

---

[18] Respondent now concedes all adjustments to Mercury Solar PTO's income except for $113,354 of Hawaii Electric Company (HECO) rebate income that respondent claims Mercury Solar PTO failed to report on its 1999 Federal income tax return. Respondent concedes that Sparkman's income from Mercury Solar PTO does not exceed the amounts Sparkman reported therefrom on Schedule E for each year at issue, plus, with respect to tax year 1999, the $113,354 of disputed HECO rebate income. Consequently, respondent's bottom line is that Sparkman should be subject to self-employment tax on all amounts that he previously has reported as income from Mercury Solar PTO for the years at issue, plus should recognize $113,354 additional income (and pay self-employment tax) with respect to the disputed HECO rebate payments. As previously noted, petitioners have not separately challenged respondent's positions with respect to Sparkman's liability for self-employment taxes, other than to argue that we should reject respondent's argument that Mercury Solar PTO has no existence apart from Sparkman.

transferred property differed materially before and after the trust's creation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other trust beneficiaries; and (4) whether the taxpayer respected the restrictions placed on the trust's operation as set forth in the trust documents. See, e.g., Muhich v. Commissioner, supra. As discussed below, each of these factors supports a conclusion that Mercury Solar PTO had no economic substance.

A. Sparkman's Relationship to the Mercury Solar Business

For about 10 years, Sparkman operated his Mercury Solar business as a sole proprietorship. In 1993, he purported to transfer the business to HEH; about a year later, HEH purported to transfer it to Mercury Solar PTO. Insofar as the record reveals, the business remained the same, apparently doing business under the same name (Mercury Solar) as it always had, relying on Sparkman's technical expertise.[19]

As far as the record reveals, Sparkman's relationship to the Mercury Solar business did not differ materially before and after these purported transfers to HEH and Mercury Solar PTO. As sole

---

[19] In fact, Mercury Solar PTO does not even have its own solar contractor's license but instead uses Sparkman's license. As Sparkman testified in the trial of Richter v. Commissioner, T.C. Memo. 2002-90:

> I'm the one with the technical expertise [at Mercury Solar PTO] and the license. In fact, Mercury Solar uses my [solar contractor's] license.

"agent" of both HEH and Mercury Solar PTO, Sparkman was authorized to act as "President" of each purported entity and to operate each "to the same extent as if he were the owner." Insofar as the record reveals, he did just that. There is no evidence that, in the brief interlude between purportedly receiving the Mercury Solar business from Sparkman and retransferring it to Mercury Solar PTO, HEH did anything other than (as connoted by its name) hold the Mercury Solar business for Sparkman, who continued to run it as he always had.[20] As far as the evidence shows, nothing much changed when the Mercury Solar business purportedly was transferred from HEH to Mercury Solar PTO. Porter (Sparkman's ex-spouse), who in 1998 was named "trustee" of Mercury Solar PTO, testified that Sparkman, as "agent" of Mercury Solar PTO, made the "operational decisions" during 1996-2000, "except for when * * * Mr. Myron Thompson was the operational operation manager." Thompson's testimony shows, however, that he regarded the Mercury

---

[20] In the trial of Hvidding v. Commissioner, T.C. Memo. 2003-151, Sparkman testified that HEH had no employees "other than the trustees if those are considered employees". In the trial of Richter v. Commissioner, supra, Joseph John Miskowiec, who was a solar energy salesman for the Mercury Solar business, testified that Sparkman was the "overall supervisor" at HEH. But since, by Sparkman's own testimony, HEH had no employees to supervise, we surmise that Sparkman "supervised" the Mercury Solar business that HEH purported to hold.

Solar business as Sparkman's business. He testified: "I actually managed his [Sparkman's] company * * * Mercury Solar."[21]

As "agent" of both HEH and Mercury Solar PTO, Sparkman was authorized to act as the "official authorized signature" on the bank accounts of those purported entities. For the years at issue, Sparkman also effectively controlled income allocations and distributions of Mercury Solar PTO (which were made almost entirely to himself).[22] There is no credible evidence that he meaningfully shared that control with anyone else.

---

[21] In a memorandum dated September 22, 1997, and addressed to "All Staff and Contractors of Mercury Solar and HEH", Myron Thompson (Thompson) stated:

> Effective today, I will be assisting Scott [Sparkman] in organizing the companies [HEH and Mercury Solar] for the sake of current and future expansion. I will be assuming the role of Temporary Executive Director of both HEH and Mercury Solar. Scott [Sparkman] will continue as President. [Emphasis added.]

[22] Porter, who was supposedly one of two trustees of Mercury Solar PTO during the years at issue (and sole trustee after May 1998) testified that income allocations during those years were made by Thompson and Sparkman, "with sometimes it being run by myself." She added, however: "it's certainly not * * * something I had a day to day involvement with". We are not persuaded that either Porter or Thompson had any meaningful role with respect to income allocations or distributions during the years at issue. Apart from Porter's vague, contrived, and noncredible testimony, all the evidence indicates that she was a mere figurehead for both HEH and Mercury Solar PTO. The Mercury Solar PTO organizational documents do not authorize Thompson to make income allocations or distributions. In testifying as to the nature of his duties and activities at Mercury Solar PTO, Thompson made no mention of making any income allocations or distributions.

B.  Independence of Mercury Solar PTO Trustees

When Mercury Solar PTO was purportedly created in 1994, someone named J. Clark Atkinson (Atkinson) was named "Fiduciary Owner".  On the same day, Atkinson appointed Sparkman as "Agent" to  "operate the company to the same extent as if he were the owner."  In 1998, Atkinson appointed Porter as "Trustee" (notwithstanding that Mercury Solar PTO's formation documents make no provision for any "trustee", but only for "Fiduciary Owners") and resigned shortly thereafter as "Fiduciary Owner" (thereby leaving Mercury Solar PTO with no "Fiduciary Owner").

On the basis of the evidence in the record, we are not persuaded that either Atkinson or Porter served any independent role in Mercury Solar PTO as "Fiduciary Owner" or "trustee".[23]  The evidence does not show that Atkinson ever did anything, except possibly sign some documents.  We draw an adverse inference from petitioners' failure to call Atkinson as a witness.  Porter's testimony, on the other hand, convinced us that she had no meaningful role at Mercury Solar PTO but was merely an absentee

---

[23] Similarly, there is no indication in the record that the trustees or "Fiduciary Owners" of HEH, apart from Sparkman, had any meaningful role in that purported entity.  On Aug. 10, 1994, when Mercury Solar PTO was purportedly created, the trustees of HEH were Lee Allan Hansen and Porter.  There is no indication in the record of what duties, if any, Lee Allan Hansen performed with respect to HEH other than signing some organizational documents.  Nor is there any indication that Porter had any significant duties as purported trustee of HEH.  To the contrary, her testimony evinced no meaningful knowledge of HEH operations.

figurehead (living in Florida, engaged in the film business) doing the bidding of her ex-spouse, Sparkman, in signing some papers for Mercury Solar PTO.  At trial, she evinced practically no knowledge of Mercury Solar PTO's organizational documents or its operations (as evidenced in part by her lack of knowledge about the purported Mercury Solar PTO record of certificate holders, discussed in the next section).  She testified that operational decisions were made by Sparkman or Thompson, and that income allocations were "certainly not * * * something I had a day to day involvement with".

C.  Economic Interest of Beneficiaries Other Than Sparkman

The stipulated evidence includes a document captioned "CERTIFICATE RECORD FOR MERCURY SOLAR Beginning this 15th JULY, 1994".  This purported certificate record shows that on July 15, 1994, (the date Mercury Solar PTO was purportedly created) HEH was "Assigned" 100 units of Mercury Solar PTO; i.e., all the beneficial units authorized by the Mercury Solar PTO formation document.  The purported certificate record shows that these 100 units were "Released" on July 25, 1995, and that on that same date Sparkman was "Assigned" 100 units.[24]  Accordingly, Sparkman then

_____

[24] When asked to explain this evidence, Porter testified: "I think you'd have to ask these questions to Mr. Sparkman or somebody else".  Previously, she had opined (without reference to any evidence in the record) that Sparkman had owned 50 units and HEH had owned 50 units.  Sparkman's testimony provided no credible insight into this matter.  Sparkman seemed to suggest that both he and HEH received 100 units of Mercury Solar PTO, on

(continued...)

held all 100 authorized units of Mercury Solar PTO.  Inasmuch as there is no evidence that Sparkman made any separate contribution to Mercury Solar PTO or gave HEH any consideration for its purported 100 units of Mercury Solar PTO, this paper shuffling of Mercury Solar PTO units to HEH and then to Sparkman further evidences the lack of economic reality of these arrangements.

According to the purported certificate, in "4/98" William Montgomery and William Bright were each "Assigned" one unit of Mercury Solar PTO, and these units were also "Released" on "4/98". Porter and Sparkman acknowledged in their testimony that these entries were erroneous and that Montgomery and Bright never received any Mercury Solar PTO units.

The only other entry on the purported certificate record shows that on December 31, 1999, Thompson was "Assigned" one unit of Mercury Solar PTO, which was "Released" on January 20, 2000. Porter, the nominal "trustee" of Mercury Solar PTO, was unable to explain this entry.[25]  The Mercury Solar PTO minutes indicate that it was not until January 20, 2000, that Porter communicated with

---

[24](...continued)
the theory that "the signing a release doesn't mean they are gotten rid of, they are just handed out to the particular party". Sparkman's theory is incompatible with the terms of the Mercury Solar PTO formation document, which authorized the issuance of only 100 units in total.

[25] With regard to this matter, Porter testified:  "I can't explain that * * *  It's the first time I've seen the document."

Sparkman about making Thompson, prospectively, a beneficiary.[26] Accordingly, we are unpersuaded that Thompson received any beneficial unit in 1999. In fact, on the basis of all the evidence, we do not believe that Thompson ever became a beneficiary of Mercury Solar PTO.[27] At trial, Thompson himself showed no prior awareness of being a beneficiary of Mercury Solar PTO. When questioned whether he was aware that he had a beneficial share of Mercury Solar PTO, Thompson replied: "I am now." When questioned what became of the share, Thompson replied, "I don't know actually."

On the basis of all the evidence, we conclude that Sparkman was the only holder of beneficial units of Mercury Solar PTO during the years at issue.[28]

---

[26] A photocopy of a written communication from "Amanda J. McKeough-Porter" to Sparkman, dated January 20, 2000, and captioned "Mercury Solar P.T.O. Minutes #12" states:

> As we discussed on the phone, Myron Thompson is to be made a beneficiary of Mercury Solar and issued a SINGLE (1) beneficiary certificate to that effect. Please have the certificate prepared and forwarded to me for perusal and signature.

[27] We are mindful that Mercury Solar PTO's 1999 Federal income tax return includes a Schedule K-1 showing a $33,600 distribution to Thompson, and that in this proceeding respondent has not sought to include this amount in Sparkman's income. We are not persuaded, however, that this purported "beneficiary's" share of Mercury Solar PTO's income represented anything more than payment for Thompson's services. The Mercury Solar PTO Federal income tax returns for all other years at issue include Schedules K-1 only for Sparkman.

[28] Indeed, in June 2000, during the trial of Richter v.
(continued...)

D.  Respect for Trust Restrictions

As just discussed, as "agent" of Mercury Solar PTO, Sparkman was authorized to, and did, operate the Mercury Solar business "to the same extent as if he were the owner".  He appears to have made (almost entirely to himself) the Mercury Solar PTO income allocations and distributions, even though the Mercury Solar PTO formation document appears to confer that duty on the "Fiduciary Owners".  Moreover, as previously noted, Mercury Solar PTO organizational documents were in practice disregarded in various important ways, including these:  Porter was named "trustee" even though the organizational documents made no provision for a "trustee"; the first and only "Fiduciary Owner" resigned and was never replaced by another; schedules A and B of the Mercury Solar PTO formation document show HEH's being assigned 100 beneficiary certificates twice, even though the formation documents authorized only 100 certificates in total; the record of certificate ownership is, by Sparkman's and Porter's acknowledgments, erroneous and shows Thompson as having been assigned a Mercury Solar PTO certificate some 3 weeks before Porter even requested Sparkman to prepare such a certificate.

---

[28](...continued)
Commissioner, T.C. Memo. 2002-90, Sparkman testified that he "believed" he was the only beneficiary of Mercury Solar PTO.

In sum, we conclude and hold that Mercury Solar PTO lacked economic substance and should be disregarded for Federal tax purposes and its income attributed to Sparkman.[29]

III.  Unreported Income From HECO Rebates

The parties stipulated that for 1999 HECO issued Mercury Solar PTO a Form 1099 showing nonemployee compensation of $195,275.  At trial and on brief, petitioners seek to repudiate this stipulation, on the ground that respondent has not produced a copy of the Form 1099.  Without disputing that HECO made payments of $195,275 as part of a rebate program, petitioners contend that only $81,921 of those payments was made to Mercury Solar PTO, which duly reported that amount on its 1999 Federal income tax return.  Petitioners contend that the remaining amount of the HECO

---

[29] For the first time on reply brief, petitioners argue that if Mercury Solar PTO is to be disregarded as a separate entity, then it "should be recognized as not separate from HEH and not Sparkman, as the Respondent contends."  We construe petitioners' syntactically challenged argument to be that if Mercury Solar PTO is disregarded, its income should be attributed to HEH rather than to Sparkman.  Because petitioners did not raise this argument or position in their pretrial memorandum, at trial, or on opening brief, respondent has had no opportunity to address petitioners' position.  We find petitioners' attempt to raise this argument to be untimely.  See Taiyo Haw. Co. v. Commissioner, 108 T.C. 590, 607 (1997).  But even if we were to consider petitioners' argument, it would be unavailing.  On the basis of all the evidence in the record, we are unpersuaded that Sparkman's transfer of the Mercury Solar business to HEH had any more economic reality than the subsequent retransfer to Mercury Solar PTO.  Furthermore, on the basis of all the evidence, we have found that Sparkman, not HEH, held all the beneficial interests in Mercury Solar PTO during the years at issue.

payments was made to HEH, which they contend reported these amounts on its own returns.

Respondent now concedes that Mercury Solar PTO reported $81,921 of the HECO payment on its 1999 Federal income tax return. Respondent contends, however, that the remaining $113,354 was also income of the Mercury Solar business and should have been reported by Sparkman in 1999. We agree.

The Court does not permit a party to a stipulation to qualify, change, or contradict it except where justice may require. Rule 91(e). Justice does not so require in these cases. Sparkman's testimony does nothing to impugn his now-disputed stipulation but does much to bolster respondent's position regarding the HECO payments.

Sparkman testified that HECO provided rebates for installing solar systems, but that HECO might take up to 6 months to process the payments. Sparkman testified that in order to receive the benefit of the HECO payments more quickly--

> Mercury sought a factoring company * * * that would take that receivable and pay it in cash. * * * And how it worked was Mercury submitted invoices that it was owed by Hawaiian Electric Company to ABA Funding [a factoring company] and ABA Funding took a percentage of the $800 rebate depending on the time period it fronted the money from HECO, and then HECO sent ABA Funding a check made payable to Mercury Solar which ABA Funding cashed via a power of attorney that it retained.

> And apparently mid-1999 ABA Funding or Mercury Solar or HEH decided they wanted the funds directed into the Hawaii Environmental Holdings account instead of the Mercury Solar account.

The oft-cited "first principle of income taxation" is that "income must be taxed to him who earns it." <u>Commissioner v. Culbertson</u>, 337 U.S. 733, 739-740 (1949). Sparkman's testimony convinces us that the HECO payments were income of the Mercury Solar business (and hence Sparkman's income), notwithstanding contractual arrangements with a factoring company to "direct" some of the payments to HEH.[30]

Petitioners contend that HEH reported the missing $113,354 of HECO rebate payments on its 1999 tax returns. Petitioners concede that HEH did not file its 1999 Federal tax return until shortly before the trial in these cases but contend that this circumstance "should not affect the credibility of the contents of the HEH tax return". Petitioners' argument misses the mark. In the first instance, the evidence is insufficient for us to conclude with any

---

[30] On brief, petitioners suggest that the HECO rebate payments were divided between HEH and Mercury Solar PTO because, pursuant to the HECO rebate program, HEH was entitled to a portion of the rebate as the "owner" of the solar equipment, and Mercury Solar PTO was entitled to a portion of the rebate as the "contractor" of the equipment. The premises of this contention are contrary to Sparkman's testimony: "whenever someone installs a solar system via the Hawaiian Electric Company rebate program either the contractor <u>or the homeowner</u> is entitled to an $800 cash subsidy." (Emphasis added.) The terms and conditions of the HECO rebate program are not otherwise clearly described in the record. Nor does the record otherwise contain any credible basis to support dividing the rebate income between HEH and Mercury Solar PTO. The parties have not raised, and we do not reach, any issue regarding the proper tax treatment of the factoring fee that was allegedly paid to the factoring agent with respect to the HECO payments.

certainty that HEH ever reported the $113,354.[31]  More fundamentally, even if HEH had reported the income, that would not affect our conclusion that the income was from the Mercury Solar business and properly reportable by Sparkman.

IV.  Sparkman's Entitlement to Claimed HEH Losses

For each year at issue, Sparkman offset (in whole or part) his reported Mercury Solar PTO income with claimed losses from HEH.  The claimed HEH losses result largely from claimed depreciation deductions.  Respondent contends that Sparkman has not substantiated his entitlement to these claimed losses.[32]  We agree.

The only evidence introduced at trial in support of the claimed HEH losses consists of self-serving figures listed in the

_____

[31] No entry on the purported 1999 HEH Federal income tax return appears to correspond to the $113,354 of disputed HECO rebate payments.  If we believed that the $113,354 of HECO payments flowed through HEH to Sparkman, and that he had consequently reported it on his own 1999 Federal income tax return, we might be sympathetic to an argument that Sparkman should not be taxed twice on the same income.  Petitioners have not raised this argument, however, and the record does not establish that Sparkman reported any of the $113,354 on his own return.

[32] Alternatively, respondent argues that the transactions between HEH and its customers, whereby HEH purportedly sold solar energy to its customers while retaining title to the solar water heating equipment installed at the customers' properties, were in substance sales by HEH of the equipment; consequently, respondent argues, HEH had no depreciable basis in the solar water heating equipment.  Because we resolve this issue in respondent's favor on the ground that petitioner has failed to substantiate the claimed HEH losses, we need not and do not address respondent's alternative argument.

HEH returns (prepared, signed, and filed by Sparkman less than 3 weeks before trial) and attachments thereto, and Sparkman's returns for the years at issue. We need not accept these figures, and we decline to do so. Petitioners have the burden of demonstrating their entitlement to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must keep sufficient records to substantiate claimed deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In particular, to substantiate entitlement to a depreciation deduction, the taxpayer must establish, among other things, the property's depreciable basis, by showing the property's cost, its useful life, and the previously allowable depreciation. See, e.g., Cluck v. Commissioner, 105 T.C. 324, 337 (1995). The record contains no credible evidence establishing Sparkman's entitlement to the claimed HEH losses; consequently, we sustain respondent's determination that he is not entitled to the claimed HEH losses for the years at issue.

V.   Additional Deductions Claimed by Sparkman

On brief, petitioners contend that if Mercury Solar PTO is disregarded for tax purposes, or if Sparkman is found not to be entitled to his claimed HEH losses, then he should be permitted to amend his individual income tax returns for the years at issue to claim additional charitable deductions and mortgage interest deductions. Petitioners' brief does not specify what the amounts

of these additional deductions should be nor point to any evidence in the record substantiating any such deductions.  In any event, the record does not establish that Sparkman is entitled to additional itemized deductions.[33]

## VI.  Penalties and Additions to Tax

### A.  Addition to Tax for Failure To Timely File Returns

Respondent determined that Sparkman is liable for section 6651(a)(1) additions to tax for failure to timely file his Federal income tax returns for tax years 1996, 1997, 1998, and 1999.

---

[33] Although the record contains correspondence from the Church of Scientology and related organizations purporting to show contributions by Sparkman (some of which Sparkman concedes he has already claimed on his 2000 Federal income tax return), Sparkman testified that some unspecified amount of the contributions came from HEH.  He testified:  "for some reason, they sent it to me, it should have been sent to Hawaii Environmental Holdings.  * * * The church has added a confusion into it that they've sent me a statement when it should have been sent to someone else, to Murphy or to HEH."  Petitioners have not argued that we should disregard HEH so as to entitle Sparkman to deduct charitable deductions made by HEH, nor have petitioners otherwise shown that Sparkman is entitled to deduct charitable contributions made by HEH.

Similarly, the record contains certain mortgage interest statements, purportedly sent to Sparkman by various lenders, showing certain interest payments for 1998.  Sparkman's testimony suggested that the additional interest expense related to a California "Kagel Canyon" property that he claimed to have bought in 1991.  We note, however, that in Schedule A to the HEH formation documents, Sparkman purported to convey "Kagel Canyon" real estate to HEH.  We also question whether Sparkman owned the "Kagel Canyon" property at any relevant time:  Evidence in the record shows that in January 2000, Sparkman e-mailed Porter, inquiring about buying a "farm" from her.  Porter testified that the property in question was a property in "Kagel Canyon", California.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return unless the taxpayer establishes that the failure "is due to reasonable cause and not due to willful neglect". A delay is due to reasonable cause if "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

It is undisputed that Sparkman filed his individual Federal income tax returns for the years 1996 through 1999 on or about June 20, 2000. Accordingly, respondent has met his burden of production pursuant to section 7491(c). Sparkman bears the burden of proving that his failure to timely file is due to reasonable cause and not to willful neglect. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001). Sparkman has failed to carry this burden.

Sparkman argues that his late filing was due to reasonable cause because he had difficulty obtaining bookkeeping and accounting advice. A taxpayer has a personal and nondelegable duty to file a timely return; reliance on a bookkeeper or accountant does not provide reasonable cause for an untimely filing. United States v. Boyle, 469 U.S. 241, 249 (1985) (and cases cited therein). Perforce, difficulty in finding a bookkeeper or accountant upon whom to rely does not provide reasonable cause for an untimely filing. Sparkman is liable for the section 6651(a)(1) addition to tax with respect to each year at issue.

B.  Accuracy-Related Penalties

Respondent determined that Sparkman is liable for section 6662(a) accuracy-related penalties for all years at issue. Section 6662(a) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, negligence or disregard of rules and regulations. Negligence includes a failure to make a reasonable attempt to comply with the tax code, to exercise ordinary care in preparing a tax return, or to substantiate items properly on a tax return. Sec. 1.6662-3(b)(1), Income Tax Regs.

The evidence shows that Sparkman failed to report income from his Mercury Solar business (specifically, $113,354 of income from HECO rebate payments), which he purported to transfer to a sham trust, and claimed losses from HEH that he has failed to substantiate.  We find that the resulting understatements of Sparkman's income for all years at issue are attributable to Sparkman's negligence in failing to ascertain his correct income tax liability and in failing to substantiate claimed deductions. Accordingly, respondent has met his burden of production pursuant to section 7491(c).

The section 6662 accuracy-related penalty is inapplicable to the extent the taxpayer has reasonable cause and acted in good faith.  Sec. 6664(c)(1).  This determination is made considering all relevant facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax

liability." Id.   The taxpayer bears the burden of proving that he falls within this exception.  Higbee v. Commissioner, supra at 447.

Sparkman claims he had reasonable cause for claiming the HEH losses because of ongoing litigation in Hvidding v. Commissioner, T.C. Memo. 2003-151, and Richter v. Commissioner, T.C. Memo. 2002-90, concerning "this same issue".  These cases involved HEH customers' right to claim energy credits; these cases do not provide reasonable cause for Sparkman's failure to substantiate his claimed HEH losses.

Sparkman claims he had reasonable cause for failing to report a portion of the HECO payments because the Form 1099 was never received and (somewhat inconsistently) because he reasonably believed that HEH had reported the balance of the HECO income not reported by Mercury Solar PTO.  We have found, as petitioners stipulated, that HECO issued a Form 1099 to Mercury Solar PTO for all the payments in question.  The evidence does not establish that HEH reported, or should have reported, the disputed HECO payments or that petitioner (who prepared the HEH returns) reasonably believed otherwise; more fundamentally, the evidence does not establish that Sparkman had reasonable cause to believe that the HECO payments were properly considered as income to anyone other than himself.  We hold that Sparkman is liable for section 6662(a) accuracy-related penalties for all years at issue.

To reflect concessions by respondent,

<u>Decisions will be entered</u>

<u>under Rule 155 in docket No. 8400-03</u>

<u>and for petitioner in docket No.</u>

<u>8650-03</u>.