T.C. Summary Opinion 2010-96


UNITED STATES TAX COURT


MARTHA ANN OLSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4954-08S.          Filed July 19, 2010.


Martha Ann Olson, pro se.

<u>Stewart Todd Hittinger</u>, for respondent.


RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined an $8,133 deficiency in petitioner's 2000 Federal income tax and a $1,475 addition to tax under section 6651(a)(1).  The issues we must decide are:  (1) Whether petitioner is entitled to a $38,322[2] bad debt deduction; (2) whether petitioner is entitled to a $120 depreciation deduction; (3) whether petitioner is entitled to a $6,920 amortization deduction; and (4) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference.

At the time the petition was filed, petitioner resided in Indiana.

In July 1996 petitioner purchased a check cashing business which she operated under the name Checkrite.  Although a written memorandum of understanding was prepared, there was no formal written contract for the purchase of the business.  A portion of the purchase price was satisfied by the transfer of a parcel of

---

[2]On Schedule C, Profit or Loss From Business, petitioner claimed a $38,322 bad debt deduction.  However, on the Form 5278, Statement--Income Tax Changes, and the Form 886-A, Explanation of Adjustments, attached to the notice of deficiency respondent adjusted petitioner's income by $38,332 for the disallowed bad debt deduction.  Although this discrepancy will not bear upon our decision of whether petitioner is entitled to a bad debt deduction, it will need to be addressed in the final computations.

real estate containing a pole barn. Included in the purchase of the business were some outstanding receivables. The business was operated in a building Checkrite leased.

The Checkrite business consisted of making "pay day" loans to customers at an interest rate of approximately 11 percent per week.[3] Petitioner decided to close the Checkrite business at the end of October 1997 because the local laws regarding "pay day" loans had changed.

Petitioner continued paying rent on the business premises for "quite a few months after * * * [she] closed the business" because she initially had planned on reopening the business. Although the specific date has not been disclosed, the parties stipulate that some time during 1999 petitioner decided to sell to her brother some of the furniture and equipment she acquired when she purchased the business in 1996. After she had closed the Checkrite business, petitioner's brother, who was also in the business of making "pay day" loans, sublet the business premises from her.

Petitioner and her husband filed joint Federal income tax returns for the years 1996 and 1997. Using the cash method of

---

[3]Although the parties stipulate that the business consisted of making loans for very short periods for a significant fee in relation to the amount of the loan and cashing checks for which petitioner charged a 10-percent fee, petitioner's testimony, corroborated by record evidence, establishes that the fee (or interest rate) was 11 percent per week.

accounting, petitioner reported her husband's wages and his muffler shop business income on the 1996 and 1997 joint returns. However, petitioner did not report any of the operations of Checkrite on the 1996 and 1997 returns. Petitioner did not believe that she needed to report anything from the Checkrite business on the 1996 and 1997 returns because, in her view, she reinvested all the income back into the business; i.e., as customers would make payments against their outstanding liabilities, petitioner would collect the payments and then make additional loans to new or existing customers.

Before filing her 2000 return petitioner had not reported any income or expenses regarding Checkrite. Petitioner and her husband's 2000 joint Federal income tax return was filed on April 15, 2003.[4] On the Schedule C, Profit or Loss From Business, attached to the 2000 return petitioner reported that Checkrite used the cash method of accounting. On the Schedule C for the Checkrite business, petitioner reported zero gross income but also claimed deductions of $38,322 for bad debts, $120 for depreciation, $200 for legal and professional services, and $6,920 for amortization of goodwill. The 2000 return reported a $45,562 loss from Checkrite. At trial petitioner provided numerous canceled checks from third parties dated in 1996 and 1997 that indicate they were dishonored because of insufficient

---

[4]Petitioner's husband died in 2004.

funds or closed accounts. Petitioner testified that the dishonored checks represent bad debts but she did not produce any other records to establish that they were related to unpaid loans.

## Discussion

### A. Schedule C Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to any deductions claimed.[5] Rule 142(a); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

#### 1. Bad Debts

In the case of a noncorporate taxpayer, section 166 permits a deduction for a business debt that becomes worthless during the taxable year. Sec. 166(a), (d)(1)(A).

On the 2000 Schedule C for Checkrite petitioner reported zero gross income. Petitioner operated Checkrite in 1996 and 1997 and terminated the business around October 1997. Petitioner did not report income from Checkrite on either the 1996 or 1997 returns or on any other return before the 2000 return. Petitioner has not established the existence of bad debts, or if

---

[5]Petitioner does not contend that the burden should shift under sec. 7491(a), and the record shows no basis for such a contention.

they existed, when the amounts claimed as bad debts became worthless. Although the record contains what appear to be dishonored checks dated in 1996 and 1997, petitioner has failed to offer anything more than her self-serving testimony that they represent debts that became worthless in 2000. At trial petitioner testified that she determined that the debts became worthless in 2000 because she had verified that some of the people she had lent money to had either filed bankruptcy or died and she also believed that 3 years was the statutory period within which she could submit any claim to the local prosecutor. This Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony. Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, we hold that petitioner is not entitled to the claimed $38,322 bad debt deduction.

2. Depreciation Expense

Section 167(a) generally allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear, and obsolescence of: (1) Property used in a trade or business, or (2) property held for the production of income. Trask v. Commissioner, T.C. Memo. 2010-78. In addition a taxpayer must establish the property's depreciable basis by showing the cost of the property, its useful life, and the previously allowable depreciation. Cluck v. Commissioner, 105 T.C. 324, 337 (1995).

Petitioner, however, has failed to provide documentary or testimonial evidence establishing the property subject to depreciation, the adjusted basis of the property, see secs. 167(c), 1011, the applicable depreciation method, see sec. 168(b), the applicable recovery period, see sec. 168(c), and the applicable convention, see sec. 168(d).  In fact, petitioner did not address this issue at trial, and the record indicates that the Checkrite business ended in 1997.  Accordingly, petitioner has failed to satisfy her burden of proof, and, therefore, we sustain respondent's determination disallowing the claimed $120 depreciation deduction.  See Rules 142(a), 149(b); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

3.  Amortization Deduction

Section 197(a) generally provides that a taxpayer is entitled to an amortization deduction with respect to any amortizable section 197 intangible.  For this purpose section 197(d) defines the term "section 197 intangible" as, inter alia, goodwill.  Section 197(c)(1) defines the term "amortizable section 197 intangible" as any section 197 intangible:  (A) Which is acquired by the taxpayer after the date of the enactment of this section, and (B) which is held in connection with the conduct of a trade or business or an activity described in section 212.

Petitioner claimed a $6,920 amortization deduction for goodwill acquired upon the purchase of Checkrite. The Checkrite business ended in 1997. Petitioner did not provide any documentary or testimonial evidence establishing the acquisition of goodwill when she purchased Checkrite in 1996. On her 2000 return she described goodwill related to Checkrite with a basis of $103,800 and an acquisition date of July 1, 1996, but has not established how the basis was determined nor how it is deductible in 2000 after she closed the business in 1997. Petitioner did not address this issue at trial. Accordingly, petitioner has failed to satisfy her burden of proving respondent's determination is incorrect, and, therefore, we sustain respondent's determination disallowing the $6,920 amortization deduction. See Rules 142(a), 149(b); Petzoldt v. Commissioner, supra at 683.

B. Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner filed her 2000 return on April 15, 2003, approximately 2 years after its due date, April 15, 2001. Respondent has satisfied his burden of production with respect to the section 6651(a)(1) addition to tax. See sec. 7491(c).

Petitioner did not address this issue at trial. Accordingly, we sustain respondent's determination with respect to the section 6651(a)(1) addition to tax.  See Rules 142(a), 149(b); <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 683.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.