**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2015-52

UNITED STATES TAX COURT

RONALD G. EZZELL, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12260-14S.                    Filed August 25, 2015.

Ronald G. Ezzell, Jr., pro se.

Andrew J. Davis, for respondent.

SUMMARY OPINION

THORNTON, Chief Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner petitioned the Court for redetermination of a $7,186 deficiency that respondent determined in petitioner's Federal income tax for 2010 and a $1,437 accuracy-related penalty under section 6662(a). Following concessions, we are left to decide two issues.[2] We decide first whether petitioner may deduct expenses for his sole proprietorship in amounts greater than respondent has allowed. We hold he may to the extent stated. We decide second whether petitioner is liable for the accuracy-related penalty that respondent determined. We hold he is not.

---

[1](...continued)
Code (Code) in effect for the year in issue, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

[2]In addition to the concessions which we discuss herein, respondent conceded an adjustment in the deficiency notice relating to "Form 25551 [sic] Income". In addition to the two issues which we decide, the parties dispute two computational adjustments that turn on the amount of net income from petitioner's sole proprietorship. The parties should readjust the computational adjustments in accordance with this opinion.

Background

I.    Preliminaries

Some facts were stipulated. The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein, and we find those facts accordingly. Petitioner resided in North Carolina when the petition was filed. He timely filed a Federal income tax return for 2010 (2010 return), using the filing status of "Single".

II.    Repair Business

A.    Background

Petitioner owned a sole proprietorship that he formed in 2005 and operated during 2010 as an automobile repair business (repair business). He devoted a lot of his time to the repair business, which he operated out of a room (business headquarters) in his residence. The business headquarters measured 30 feet by 40 feet at its base and had a second level which measured 12 feet by 40 feet.

Petitioner was deployed to the Middle East on September 25, 2010, and he did not return to the United States during the rest of 2010. While petitioner was outside the United States, his father either used petitioner's funds to pay some of the repair business' recurring expenses (e.g., insurance, utilities) or assured that

those expenses were paid from petitioner's bank account through automatic payments.

Petitioner used the cash method to report on his 2010 return the following gross income, expenses, and net loss for the repair business:

| Gross income: | Amount |
|---|---|
| Gross receipts | $11,539 |
| Total | 11,539 |
| | |
| Expenses: | |
| Depreciation | 15,395 |
| Insurance (other than health) | 3,354 |
| Mortgage interest | 369 |
| Legal and professional services | 175 |
| Repairs and maintenance | 2,631 |
| Supplies | 1,149 |
| Utilities | 3,991 |
| Mileage (at standard rate) | 2,150 |
| Total | 29,214 |
| | |
| Net loss | (17,675) |

B.     Depreciation

Petitioner reported that $15,004 of the $15,395 depreciation deduction was attributable to depreciable property that he purchased and placed in service before 2010 and that the remaining $391 was attributable to depreciable property that he purchased and placed in service during 2010. Petitioner purchased all of the property for which he claimed depreciation.

During respondent's audit of the 2010 return, petitioner gave to respondent a "Depreciation and Amortization Report" (depreciation report) to support petitioner's claimed depreciation deduction. The depreciation report describes the property underlying the reported depreciation and lists for each property the date placed in service, the cost, the business use, the depreciable basis, the depreciable life, the depreciation method and convention, and the prior and current depreciation claimed. The property and the corresponding relevant amounts shown in the depreciation report are as follows:

| Property | Date placed in service | Cost | Depreciation | |
|---|---|---|---|---|
| | | | Prior | Current |
| 2010 shop tools | 6/10/10 | $2,739 | -0- | $391 |
| Current year total | | 2,739 | -0- | 391 |
| | | | | |
| Shop | 1/1/05 | 36,000 | $13,561 | 2,244 |
| Miller Matic 210 (welder) | 1/1/05 | 1,850 | 1,743 | 107 |
| Used Ammco brake lathe | 1/20/05 | 2,000 | 1,554 | 178 |
| Computer | 2/1/05 | 1,100 | 1,037 | 63 |
| Tire changer | 2/10/05 | 2,000 | 1,554 | 178 |
| Used pro cat brake lathe | 2/10/05 | 3,500 | 2,719 | 312 |
| Brake lathe table | 2/10/05 | 450 | 349 | 40 |
| Tire balancer | 3/5/05 | 1,800 | 1,399 | 160 |
| Drill press | 3/20/05 | 350 | 272 | 31 |
| Bush Hog lawnmower | 4/15/05 | 8,200 | 6,371 | 732 |
| Car lift | 4/15/05 | 2,300 | 1,786 | 206 |
| Transmission jack | 5/1/05 | 500 | 389 | 44 |
| Septic tank | 11/1/05 | 1,200 | 452 | 75 |
| OTC diagnostic scanner | 12/1/05 | 4,300 | 4,052 | 248 |
| A/C machine | 4/6/06 | 2,500 | 1,719 | 223 |
| Flush machine | 5/3/06 | 1,800 | 1,238 | 161 |
| Plasma cutter | 10/2/06 | 2,385 | 1,640 | 213 |
| 2007 shop tools | 6/1/07 | 40,863 | 22,993 | 5,106 |
| Shop building | 11/30/08 | 20,861 | 602 | 535 |
| 2008 shop tools | 12/1/08 | 8,895 | 2,769 | 1,750 |
| Pro-cut 9.2 brake lathe | 3/27/09 | 3,500 | 875 | 750 |
| Robin Air 34788 | 4/29/09 | 2,900 | 518 | 681 |
| Building shed attachment | 10/23/09 | 1,957 | 24 | 193 |
| General tools | 12/1/09 | 2,809 | 100 | 774 |
| Prior year total | | 154,020 | 69,716 | 15,004 |
| Totals | | 156,759 | 69,716 | 15,395 |

The Bush Hog lawnmower is a large lawnmower. Petitioner used it to mow the grass on the grounds of his repair business. He also used it to mow the grass at other locations where he placed signs to advertise his business.

Petitioner used the computer in his repair business. He bought the computer in 2005 for $1,100.

Petitioner purchased various shop "tools" for the repair business during 2007 and 2008. He capitalized the cost of the shop tools. The costs of the shop tools that he purchased in 2007 and 2008 were $32,711 and $9,146, respectively.

## C.     Repairs and Maintenance

The business headquarters originally had a French door on the second level, which was accessible only by ladder. The door was not covered, and rain throughout the years had caused the door to rot. Before 2010 petitioner replaced the door, built a dock to gain easier access to the second level, and built a shelter over the second level (including over the door).

Petitioner later learned that a wall on the second level of the business headquarters had rotted and become moldy from the water damage. He bought various items during 2010 primarily to repair the wall and to install two toilets. He also used some of those items to maintain (but not to construct) the shelter.

The most expensive single item that petitioner purchased for these projects was insulation, which cost $600. Most of the other items cost less than $100 each.

### D. Utilities

Petitioner reported on the 2010 return that he had paid $3,991 of utilities expenses with respect to the repair business. These expenses related to payments that petitioner made for (1) the provision of electricity to the business headquarters and to the rest of his residence, (2) a cellular phone which he used primarily for business, and (3) a bundled package comprising digital cable television for three televisions, DVR service for two televisions, Internet service, and two landline telephones.

Petitioner had one television in the business headquarters. He used one landline telephone primarily for business, and he maintained the second landline telephone as a dedicated line required by the State of North Carolina. He used the Internet to access specifications and other information particular to the vehicles he repaired and to purchase items used in the repair business. He continued to use the cellular phone after he went to the Middle East, primarily to check on the status of the repair business and on the payment of the repair business' recurring expenses.

Petitioner paid $1,081 for electricity provided to his residence from December 17, 2009, through December 15, 2010. He paid $1,442 during 2010 for the cellular phone service. He paid $2,173 during 2010 for the bundled package.

E.    Mileage

Petitioner kept receipts for purchases related to the repair business. Contemporaneously with his making of a purchase, he typically listed on each receipt the corresponding number of miles that he had traveled to make the purchase. Petitioner eventually used the receipts to generate a summary (mileage summary) which his bookkeeper gave to respondent during the audit.

The mileage summary was a 2010 calendar on which petitioner's bookkeeper generally copied onto the space for each day on which a receipt was issued the miles written on the receipt and the name of the receipt's issuer. In the few cases where a receipt did not list the miles traveled, the bookkeeper "googled the mileage" and wrote the number of obtained miles on the applicable day of the calendar. The mileage summary includes miles that petitioner personally traveled and miles which his father traveled while tending to petitioner's business after September 25, 2010. Petitioner concedes that he may not deduct mileage for any day after September 25, 2010.

III.    Preparation of 2010 Return

Petitioner is relatively unsophisticated as to tax matters, and he relies upon professionals to assist him on tax matters.

A certified public accountant (C.P.A.) prepared the 2010 return on the basis of the receipts and the other information that petitioner gave to the C.P.A. Petitioner met with the C.P.A. to discuss the receipts and the other information before the C.P.A. prepared the 2010 return, and petitioner proffered the receipts and the other information to the C.P.A. for his consideration.  The C.P.A. had previously prepared petitioner's Federal income tax returns for other years and was familiar with the repair business and with its operation.

IV.    Deficiency Notice

Respondent mailed petitioner a deficiency notice for 2010.  Respondent determined in relevant part that petitioner may not deduct any expense that he reported as to the repair business except for the expenses for mortgage interest and for legal and professional services.  Respondent disallowed the depreciation deduction primarily because, he determined, petitioner did not establish the cost basis of any depreciable asset.  Respondent disallowed deductions for the other expenses because, he determined, petitioner did not establish that any of the reported expenses were paid in the carrying on of a trade or business.  Respondent

also determined in the deficiency notice that petitioner was liable for an accuracy-related penalty under section 6662(a).

## V.  Respondent's Concessions

Respondent conceded before trial that petitioner is entitled to some of the disallowed deductions.  Those concessions, as well as the reported expenses and the amounts of the reported expenses which remain in dispute, are as follows:

|  | Reported | Conceded | In dispute |
| --- | --- | --- | --- |
| Depreciation | $15,395 | $12,060 | $3,335 |
| Insurance (other than health) | 3,354 | 3,354 | -0- |
| Repairs and maintenance | 2,631 | -0- | 2,631 |
| Supplies | 1,149 | 1,149 | -0- |
| Utilities | 3,991 | 1,885 | 2,106 |
| Mileage | 2,150 | 1,075 | 1,075 |
| Total | 28,670 | 19,523 | 9,147 |

## Discussion

## I.  Disputed Expenses

### A.  Burden of Proof

The Commissioner's determinations in a deficiency notice are presumed correct, and a taxpayer generally bears the burden of proving the determinations wrong in order to prevail.  See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  As one exception to the general rule, the burden of proof with respect to factual issues underlying a deficiency may shift to the Commissioner to the

extent that the taxpayer introduces credible evidence with respect to the factual issues and meets certain other requirements. See sec. 7491(a). Where, as here, the record allows the Court to decide a case without regard to the burden of proof, we need not opine on which party bears the burden of proof. See, e.g., Knudsen v. Commissioner, 131 T.C. 185, 186-189 (2008). Instead, we may decide the case on the preponderance of the evidence. See, e.g., id. We decide this case on the preponderance of the evidence.

B. Ordinary and Necessary Business Expenses

1. General Rule

Section 162(a) generally lets taxpayers deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Under that section, a cash method taxpayer such as petitioner may deduct an expenditure if it is: (1) an expense, (2) an ordinary expense, (3) a necessary expense, (4) paid during the taxable year, and (5) made to carry on a trade or business. See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352-353 (1971); Lychuk v. Commissioner, 116 T.C. 374, 386 (2001).

2. Personal and Capital Expenses

Section 162(a) does not let taxpayers deduct personal, living, or family expenses. See sec. 262(a). Nor does section 162(a) let taxpayers currently deduct

capital expenses.  See sec. 263(a).  Capital expenses include "[a]ny amount paid

out for new buildings or for permanent improvements or betterments made to

increase the value of any property".  See sec. 263(a)(1).  Deductible expenses

include repairs made to maintain property in ordinarily efficient operating

condition.  See, e.g., Ill. Merchs. Trust Co. v. Commissioner, 4 B.T.A. 103, 106

(1926);[3] accord Gibson & Assocs., Inc. v. Commissioner, 136 T.C. 195, 232-233

(2011).

The characterization of an expenditure as a deductible repair or a capital

expense is not always straightforward and generally hinges on the unique facts of

each case.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 86 (1992).  Former

---

[3]In the seminal case of Ill. Merchs. Trust Co. v. Commissioner, 4 B.T.A. 103, 106-107 (1926), the Board considered whether the cost of repairing rotting support pilings in a warehouse was deductible as an ordinary expense where the warehouse threatened to collapse if the repairs were not made.  The warehouse was on the Chicago River, and the pilings supporting the warehouse developed dry rot when the river unexpectedly receded.  See id. at 104.  The taxpayer removed the dry rot and inserted cement supports between the pilings and the floor of the building.  See id.  The taxpayer removed large parts of the ground floor and shored up and raised the partially collapsed wall.  See id.  The Board held that the cost of the taxpayer's work was deductible because it was incurred to prevent the total loss of the building and to keep the property in its ordinary operating condition as a warehouse.  See id. at 106-107.

section 1.162-4, Income Tax Regs.,[4] illustrates the distinction between a

deductible repair and a nondeductible capital expense as follows:

> The cost of incidental repairs which neither materially add to the
> value of the property nor appreciably prolong its life, but keep it in an
> ordinarily efficient operating condition, may be deducted as an
> expense, provided the cost of acquisition or production or the gain or
> loss basis of the taxpayer's plant, equipment, or other property, as the
> case may be, is not increased by the amount of such expenditures.
> Repairs in the nature of replacements, to the extent that they arrest
> deterioration and appreciably prolong the life of the property, shall
> either be capitalized and depreciated in accordance with section 167
> or charged against the depreciation reserve if such an account is kept.
> * * *

### 3. Need To Substantiate Expenses

Taxpayers generally bear the burden of substantiating an expense in order to

deduct it.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975),

aff'd, 540 F.2d 821 (5th Cir. 1976).  All the same, the Court may apply the

longstanding Cohan rule to estimate an expense that a taxpayer establishes is

deductible but does not otherwise substantiate the precise amount of.  See Cohan

v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The Court may apply the

Cohan rule, however, only if the record gives the Court a basis upon which to

---

[4]T.D. 9564, 2012-14 I.R.B. 614, amended by Announcement 2013-7, 2013-3 I.R.B. 308, revised former sec. 1.162-4, Income Tax Regs., generally for taxable years beginning after December 31, 2013.

estimate the deductible expense.  See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

### 4. Vehicle Expenses

Vehicle expenses are subject to strict substantiation rules and are excepted from the Cohan rule.  See secs. 274(d)(4), 280F(d)(4)(A)(i), (5); see also Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  These strict rules allow taxpayers to substantiate vehicle expenses through adequate records that establish (1) the amount and business purpose of the expense and (2) the time and place of the vehicle's use.  See sec. 274(d).  Adequate records are (1) an account book, a log, a statement of expense, or a similar record and (2) documentary evidence (e.g., receipts, paid bills, or similar evidence), which together are sufficient to establish each element of an expenditure.  See sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985); see also sec. 1.274-5(c)(2)(iii), Income Tax Regs.

### C. Depreciation Expense

Taxpayers may deduct depreciation for certain tangible property used in a trade or business.  See sec. 167(a); see also secs. 167(b), 168.  Depreciation is generally computed by using the cost of the depreciable property as its basis.  See

secs. 167(c), 1011(a), 1012(a). Where the Commissioner has determined that a taxpayer failed to establish the cost of depreciable property, the taxpayer must establish the cost of the property in order to depreciate it. See Cluck v. Commissioner, 105 T.C. 324, 337 (1995); Reinberg v. Commissioner, 90 T.C. 116, 139 (1988).

D.    Depreciation in Issue

The parties dispute whether petitioner is entitled to deduct $3,335 of the depreciation that he reported for 2010. The disputed depreciation relates to the following property:

| Property | Disputed depreciation |
|----------|----------------------|
| 2010 shop tools | $291 |
| Computer | 63 |
| Miller Matic 210 welder | 107 |
| Tire changer | 178 |
| Brake lathe table | 40 |
| Drill press | 160 |
| Car lift | 206 |
| Transmission jack | 44 |
| Flush machine | 161 |
| Plasma cutter | 213 |
| Bush hog lawnmower | 732 |
| 2007 and 2008 shop tools | 1,140 |
| Total | 3,335 |

We start with the Bush Hog lawnmower. Respondent asserts in his pretrial memorandum that he disallowed the depreciation deduction for that lawnmower

because petitioner's use of it was not ordinary and necessary to his carrying on of the repair business. We disagree with respondent's rationale for his disallowance of that depreciation deduction. A depreciation deduction is not dependent on the taxpayer's satisfaction of the "ordinary and necessary" expense requirements of section 162 but rests solely on the taxpayer's use of depreciable property in a trade or business. See Noyce v. Commissioner, 97 T.C. 670, 689-690 (1991). Because we have found that petitioner used the Bush Hog lawnmower in the repair business, we hold that he may deduct the depreciation that he reported on that property.[5]

We turn to the other property in dispute and, more specifically, the amounts of petitioner's bases in that property. We start first with the computer and with the 2007 and 2008 shop tools. We have found that petitioner paid $1,100 for the computer and that he respectively paid $32,711 and $9,146 for the 2007 and 2008 shop tools. We conclude that petitioner's bases in those three items are the amounts of those corresponding payments. We hold therefore that petitioner may

---

[5]Respondent does not assert that petitioner is precluded from depreciating the Bush Hog lawnmower because he failed to establish his basis in that item. Nor does respondent assert that petitioner's deduction for some of the depreciation on that item should be disallowed because it is personal. We consider those potential assertions waived and do not consider them. See Swords Trust v. Commissioner, 142 T.C. 317, 339 n.30 (2014).

expense those payments through depreciation deductions. As for the remaining property, however, we agree with respondent that the record does not reveal petitioner's bases in any of that property. We conclude and hold that petitioner may not deduct depreciation as to any of that remaining property.

E.    Other Expenses in Issue

1.    Repairs and Maintenance

Respondent disallowed petitioner's deduction of $2,631 in expenses for repairs and maintenance. Respondent asserts that these expenses must be capitalized because they relate to petitioner's building of a shelter over the second level in the business headquarters. We have found, however, that the expenses related not to the building of the shelter but primarily to petitioner's repair of the wall that was damaged by water.[6] Given the minimal amount of these expenses, $2,631, vis-a-vis the 2005 cost of the business headquarters, $36,000, and the 2008 cost of the shelter, $20,861, we infer that the repair in 2010 did not meaningfully increase the value or the original service life of the business headquarters but merely kept it in ordinarily efficient operating condition. We

---

[6]We note that petitioner repaired the wall in a year after the year that he built the second level and that, for 2008, petitioner capitalized $20,861 in expenses for "Shop building". We infer and find that the $20,861 in expenses was related to the building of the shelter.

hold that petitioner may deduct the disputed repairs and maintenance expenses as ordinary and necessary business expenses under section 162(a).

### 2.    Utilities

Petitioner claimed a $3,991 deduction for utilities expenses related to the repair business. Respondent conceded that petitioner may deduct $1,885 of the $3,991 as a business expense and asserts that the remaining $2,106 is a nondeductible personal expense. Respondent computed the $1,885 by assuming (incorrectly as he now acknowledges) that the repair shop business was terminated when petitioner went to the Middle East. While the record does not allow the Court to determine petitioner's deduction for utilities expenses with any scientific precision, we are able to determine that amount from the evidence with the assistance of reasonable inferences which we draw from the record.

First, as to the electricity expense, we infer that one-half of the $1,081 charge for 2010 was for electrical services supplied to the repair business. Petitioner both worked and lived at the site of his residence; and given our finding that petitioner devoted a lot of his time to the repair business, we consider it reasonable on the basis of the record at hand to split the electricity expense equally between his business and his personal pursuits. We hold that petitioner may deduct $541 for electricity ($1,081 × 50%).

Second, as to the cellular phone, petitioner used that phone primarily for business. We consider it reasonable to allow petitioner to deduct 80% of the $1,442 charge for the cellular phone. We hold that petitioner may deduct $1,154 for cellular phone service ($1,442 × 80%).

Third, as to the bundled package, we have found that one television, two phone lines, and some of the Internet service were for the benefit of the repair business. While the record does not include a breakdown of the cost for 2010 of each of the services underlying the bundled package, there is a stipulated bill for a bundled package provided to petitioner during 2012, which breaks down the charges for the various services for 2012. We understand that the parties included this bill in the record as representative of the charges for the various bundled services during 2010, and we use the bill to determine the amount of petitioner's deduction for utilities expenses for 2010. The bill shows that the monthly cost for digital cable, Internet service, and one telephone line is $115.77, that the monthly cost of the second telephone line is $29.95, and that petitioner paid for each month tax and various fees at a rate that we calculate as 7.86%. For 2010 we allow petitioner to deduct for each month 80% of the $115.77 and all of the $29.95, plus an additional amount for tax and fees. Stated differently, we hold that petitioner

may deduct $1,586 for the bundled package (([80% × $115.77] + $29.95) × 1.0786 × 12 months).

In sum, we compute petitioner's deduction for utilities expenses as follows:

| | |
|---|---:|
| Electricity | $541 |
| Cellular phone | 1,154 |
| Bundled package | 1,586 |
| Total | 3,281 |

3.    Mileage

Petitioner claimed a $2,150 deduction for mileage related to the repair business. Respondent concedes that petitioner may deduct $1,075 of the $2,150 as a business expense and asserts that the remaining $1,075 is a nondeductible personal expense. Respondent objects to petitioner's mileage summary because, respondent states, it was not prepared contemporaneously with petitioner's travels.

Respondent's disallowance of part of petitioner's reported vehicle expense is based on respondent's objection to petitioner's mileage summary. The regulations provide specifically that "[a] contemporaneous log is not required", sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra, and focus more appropriately on the need to record the requisite information at or near the time of each business use of the vehicle, see sec. 1.274-5T(c), Temporary Income Tax Regs., supra. Petitioner met the "at or near" requirement in that he typically

recorded on each of his receipts the business miles that he traveled with regard to the receipt and did so contemporaneously with his travels related to the receipts.[7] The receipts meet the regulatory requirements for petitioner's vehicle expense deduction in that they embody the requisite statements of expenses (or similar records) by establishing the actual business miles that petitioner traveled on each trip, the time and place of the travel, and the business purpose of the travel. The mileage summary was not necessary to support the deduction further but was simply a more efficient restatement of the miles and the other information listed on the receipts.

We conclude that petitioner may deduct his reported mileage with one adjustment. The adjustment takes into account petitioner's concession that he may not deduct mileage for any day after he was deployed to the Middle East. We ascertain from the mileage summary that petitioner claimed the standard mileage rate with respect to 1,280 miles reported for days traveled after September 25, 2010. The standard mileage rate for 2010 is 50 cents per mile. See Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930. See generally sec. 1.274-5(j)(2), Income Tax Regs. (stating that the Commissioner may establish a procedure for

---

[7]While respondent questions the accuracy of the reported mileage, we find nothing in the record from which to conclude that the reported mileage failed to accurately measure petitioner's business mileage.

taxpayers to use mileage rates to compute vehicle expenses). We reduce by $640 (1,280 miles × .50 per mile) petitioner's reported vehicle expense of $2,150 and hold that petitioner may deduct $1,510 as a vehicle expense.

## II.    Accuracy-Related Penalty

Respondent determined that petitioner is liable for a 20% accuracy-related penalty under section 6662(a) and (b)(1) and (2) on account of negligence or, alternatively, of a substantial understatement of income tax. Respondent stated at trial that he was still pursuing the penalty but only for negligence. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code or to exercise ordinary and reasonable care in the preparation of a tax return. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes a failure to keep adequate books and records or a failure to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs.

The Commissioner bears the burden of production with respect to a taxpayer's liability for an accuracy-related penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent asserts that petitioner was negligent because he failed to keep adequate books and records and failed to substantiate the expenses underlying his deductions. We disagree that petitioner was negligent with respect to the 2010 return.

Petitioner has produced receipts for most of his reported expenses, and his failure to present a handful of receipts to substantiate all of his expenses does not necessarily mean that he failed to keep adequate books and records or failed to substantiate the expenses underlying his deductions. The lion's share of the missing receipts related to relatively small-dollar items of depreciable property which we have found that petitioner did in fact purchase. Moreover, petitioner's bookkeeper testified credibly and without contradiction that, during respondent's audit of the 2010 return, she saw all of the missing receipts, with the exception of the receipt for the brick lathe table. Our holding that petitioner was not negligent as to the 2010 return is further supported by the facts that petitioner retained a C.P.A. to prepare the 2010 return, that petitioner and the C.P.A. met to discuss the receipts and the other information that would eventually form the basis of the amounts shown in the 2010 return, and that petitioner proffered those receipts and other information to the C.P.A. for his consideration. Petitioner's actions as to the preparation of the 2010 return show us that he knew that he had an obligation to file a correct Federal income tax return for 2010 and that, while he was relatively unsophisticated as to tax matters, he was reasonably attempting to comply with the provisions of the Code and to exercise ordinary and reasonable care in the preparation of the 2010 return.

We hold that petitioner is not liable for the accuracy-related penalty that respondent determined.

III.  Conclusion

Petitioner may deduct the disputed expenses to the extent stated herein.  In addition, petitioner is not liable for the accuracy-related penalty that respondent determined.

To reflect the foregoing,

Decision will be entered

under Rule 155.